Dan **BOYLES**, Jr., Petitioner,

v.

Susan Leigh **KERR**, Respondent.

No. D–0963.

Supreme Court of Texas.

May 5, 1993.

Concurring Opinion by Justice Gonzalez
on Motion for Rehearing
May 5, 1993.

Supplemental Dissenting Opinion by
Justice Doggett on Motion for
Rehearing May 5, 1993.

Dissenting Opinion by Justice
Doggett Dec. 2, 1992.

Concurring and Dissenting Opinion
by Justice Cook Dec. 2, 1992.

## OPINION ON MOTION
## FOR REHEARING

PHILLIPS, Chief Justice.

Respondent's motion for rehearing is overruled. Our opinion of December 2, 1992, is withdrawn and the following is substituted in its place.

■ This is a suit for the negligent infliction of emotional distress. We hold that there is no general duty in Texas not to negligently inflict emotional distress. A claimant may recover mental anguish damages only in connection with defendant's breach of some other legal duty. Because Respondent proceeded below only on the theory of negligent infliction of emotional distress, we reverse the judgment of the court of appeals in her favor. 806 S.W.2d 255. However, in the interest of justice, we remand for a new trial.

### I

On August 10, 1985, Petitioner Dan Boyles, Jr., then seventeen, covertly videotaped nineteen-year-old Respondent Susan Leigh Kerr engaging in sexual intercourse with him. Although not dating steadily, they had known each other a few months and had shared several previous sexual encounters. Kerr testified that she had not had sexual intercourse prior to her relationship with Boyles.

Kerr and Boyles, who were both home in Houston for the summer, had made plans to go out on the night of the incident. Before picking Kerr up, Boyles arranged with a friend, Karl Broesche, to use the Broesche house for sexual intercourse with Kerr. Broesche suggested videotaping the activity, and Boyles agreed. Broesche and two friends, Ray Widner and John Paul Tamborello, hid a camera in a bedroom before Kerr and Boyles arrived. After setting up the camera, the three videotaped themselves making crude comments and jokes about the activity that was to follow. They left with the camera running, and the ensuing activities were recorded.

Boyles took possession of the tape shortly after it was made, and subsequently showed it on three occasions, each time at a private residence. Although he showed the tape to only ten friends, gossip about the incident soon spread among many of Kerr and Boyles' friends in Houston. Soon many students at Kerr's school, Southwest Texas State University, and Boyles' school, the University of Texas at Austin, also became aware of the story. Kerr did not learn of the video until December 1985, long after she and Boyles had stopped seeing each other. After she confronted him, Boyles eventually admitted what he had done and surrendered the tape to Kerr. No copies had been made.

Kerr alleges that she suffered humiliation and severe emotional distress from the videotape and the gossip surrounding it. At social gatherings, friends and even casual acquaintances would approach her and comment about the video, wanting to know "what [she] was going to do" or "why did [she] do it." The tape stigmatized Kerr with the reputation of "porno queen" among some of her friends, and she claimed that the embarrassment and notoriety affected her academic performance. Kerr also claimed that the incident made it difficult for her to relate to men, although she testified to having had subsequent sexually-active relationships. Eventually, she sought psychological counselling.

Kerr sued Boyles, Broesche, Widner and Tamborello, alleging intentional invasion of privacy, negligent invasion of privacy, and negligent (but not intentional) infliction of emotional distress. Before the case was submitted to the jury, however, Kerr dropped all causes of action except for negligent infliction of emotional distress. The jury returned a verdict for Kerr on that claim, assessing $500,000 in actual damages. The jury also found that all defendants were grossly negligent, awarding an additional $500,000 in punitive damages, $350,000 of which was assessed against Boyles. The trial court rendered judgment in accordance with the jury's verdict.

Only Boyles appealed to the court of appeals.[1] That court affirmed the judgment against him, concluding that Kerr established negligent infliction of emotional distress under the facts of this case. The court of appeals also affirmed based on negligent invasion of privacy, even though Kerr abandoned this theory prior to submission of the case to the jury and did not brief or argue it as a basis for affirmance in the court of appeals.

## II

Initially, we must determine whether negligent infliction of emotional distress constitutes an independent cause of action in Texas. Kerr claims that we recognized a broad right to recover for negligently inflicted emotional distress in *St. Elizabeth Hospital v. Garrard*, 730 S.W.2d 649 (Tex. 1987). Boyles contends that the *Garrard* holding is limited to the particular facts of that case.

In *Garrard*, a hospital negligently disposed of the Garrards' stillborn baby in an unmarked, common grave without the plaintiffs' knowledge or consent. The Garrards sued for negligent infliction of emotional distress, without alleging that they suffered any physical injury. This Court nonetheless concluded that they had stated a cause of action. We determined that "Texas first recognized the tort of negligent infliction of mental anguish in *Hill v. Kimball*, 76 Tex. 210, 13 S.W. 59 (1890)." 730 S.W.2d at 652. This tort, we said, had been administered under traditional tort concepts, subject only to a refinement on the element of damages: the mental suffering is not compensable unless it manifests itself physically. *Id.* After determining that the physical manifestation requirement was arbitrary because it "denies court access to persons with valid claims they could prove if permitted to do so," *id.*, we proceeded to abolish it. 730 S.W.2d at 654.

The Court then proceeded, we believe, to create a general duty not to inflict reason-

ably foreseeable emotional distress. The Court said:

Clearly, freedom from severe emotional distress is an interest which the law should serve to protect.... Having recognized that an interest merits protection, it is the duty of this court to continually monitor the legal doctrines of this state to insure the public is free from unwarranted restrictions on the right to seek redress for wrongs committed against them.... Thus, we hold that proof of physical injury resulting from mental anguish is no longer an element of the common law action for negligent infliction of mental anguish.

730 S.W.2d at 653–54. Four justices joined in the judgment, but concurred on the grounds that the same result could be reached under the traditional Texas rule allowing emotional distress damages arising from the mishandling of a corpse. *Id.* at 654. If the Court's holding was, as Boyles contends, limited to the mishandling of corpses, the concurring opinion would not need to have been written, as its rationale would have been incorporated in the majority opinion.

The liability standard under this new tort, however, was never entirely clear. *Garrard* seemed to indicate that "trivial" emotional distress should not be compensated, 730 S.W.2d at 652, and similarly that the law should protect against "severe" emotional distress. *Id.* at 653. Rather than articulating any threshold level of severity, however, the Court concluded that "[j]urors are best suited to determine whether and to what extent the defendant's conduct caused compensable mental anguish by referring to their own experience." *Id.* at 654.

While the holding of *Garrard* was correct, we conclude that its reasoning was based on an erroneous interpretation of *Hill v. Kimball*, and is out of step with most American jurisdictions. Therefore, we overrule the language of *Garrard* to the extent that it recognizes an indepen-

---

**1.** Broesche settled with Kerr after the judgment was rendered; Widner and Tamborello did not appeal.

dent right to recover for negligently inflicted emotional distress. Instead, mental anguish damages should be compensated only in connection with defendant's breach of some other duty imposed by law. This was the basis for recovery prior to *Garrard*, which expanded the scope of liability based on a misconstruction of *Hill v. Kimball*.

In *Hill*, a pregnant woman suffered a miscarriage when she witnessed the defendant severely beating two men in her yard. The woman sued for her physical injuries under negligence, claiming that the emotional trauma of witnessing the beatings produced the miscarriage and that the defendant should have reasonably anticipated the danger to her. The Court found that the plaintiff had stated a cause of action. The basis, however, was the physical injury she had suffered, together with her allegation of foreseeability. The Court reasoned as follows:

> That a physical personal injury may be produced through a strong emotion of the mind there can be no doubt. The fact that it is more difficult to produce such an injury through the operation of the mind than by direct physical means affords no sufficient ground for refusing compensation, in an action at law, when the injury is intentionally or negligently inflicted.... Here, according to the allegations of the petition, the defendant has produced a bodily injury by means of that emotion, and it is for that injury that the recovery is sought.

76 Tex. at 215, 13 S.W. at 59.

The Court considered only whether the plaintiff could recover for her physical injuries, not whether she could otherwise recover for her emotional distress or mental anguish caused by witnessing the beatings. Furthermore, the Court noted that liability would depend on "whether, under the circumstances, and with the lights before him, a reasonably prudent man would have anticipated the danger to her or not." *Id.* In other words, the defendant was negligent if he should have known that he was imposing an unreasonable risk of physical injury to the plaintiff, not if he merely should have anticipated that the plaintiff would suffer emotional distress.

*Hill*, therefore, did not recognize a cause of action for negligent infliction of emotional distress. It merely recognized the right to recover for physical injuries under standard negligence principles, notwithstanding that the physical injury is produced indirectly through emotional trauma. *Garrard* thus did not merely modify *Hill*, but created an entirely new cause of action.

The dissent vigorously denounces our abolition of the tort created in *Garrard*, calling it "controlling precedent" that contains a "rather clear pronouncement" of a new tort affirming "the respect for human dignity." 855 S.W.2d at 608, 607, 605 (Doggett, J., dissenting on rehearing). *Garrard*, however, ill deserves the lofty pedestal to which the dissent has belatedly elevated it. Even today, the justices of this Court cannot agree on the extent of *Garrard*'s reach, *see infra* at 604 (Gonzalez, J., concurring on motion for rehearing), and we have never embraced its broad holding. Thus, in *Freeman v. City of Pasadena*, 744 S.W.2d 923 (Tex.1988), we limited the bystander cause of action to those persons meeting the criteria of *Dillon v. Legg*, 68 Cal.2d 728, 69 Cal.Rptr. 72, 80, 441 P.2d 912, 920 (1968), without even citing *Garrard* as a potential basis for broader liability. Justice Ray, the author of the Court's opinion in *Garrard*, while noting in a concurring opinion in *Freeman* that, because of *Garrard*, "perhaps the need for a bystander cause of action is now without a basis," 744 S.W.2d at 925, did not explain why the plaintiff in *Freeman* could not recover under the *Garrard* tort. Further, the Court held in *Reagan v. Vaughn*, 804 S.W.2d 463, 466–67 (Tex.1990), that a child could not recover mental anguish damages resulting from a severe injury to a parent, without considering *Garrard* as a basis for recovery. Even Justice Doggett, who now views *Garrard* as a landmark in the recovery of emotional distress damages, did not deem it worthy of citation in his vigorous concurring and dissenting in *Reagan*. In fact, this Court has never upheld a recovery under the *Garrard* tort.

Were we the only Court struggling with *Garrard,* we could perhaps limit the case to its facts and let it slip into quiet oblivion. But other courts must try to understand it as well. Thus, while many lower Texas courts have read *Garrard* as creating an independent cause of action for negligent infliction of emotional distress, *see, e.g., Campos v. Ysleta Gen. Hosp., Inc.,* 836 S.W.2d 791, 795 (Tex.App.—El Paso 1992, writ denied); *C.T.W. v. B.C.G.,* 809 S.W.2d 788, 796 (Tex.App.—Beaumont 1991, no writ); *Massey v. Massey,* 807 S.W.2d 391, 397 (Tex.App.—Houston [1st Dist.] 1991, writ requested); *McNamara v. Freedom Newspapers, Inc.,* 802 S.W.2d 901, 903 n. 2 (Tex.App.—Corpus Christi 1991, writ denied); *Dominguez v. Kelly,* 786 S.W.2d 749, 753 (Tex.App.—El Paso 1990, writ denied); *Orkin Exterminating Co. v. Williamson,* 785 S.W.2d 905, 912 (Tex.App.—Austin 1990, writ denied); *Texas Dep't of Corrections v. Winters,* 765 S.W.2d 531, 532 (Tex.App.—Beaumont 1989, writ denied); *City of Watauga v. Taylor,* 752 S.W.2d 199, 204 (Tex.App.—Fort Worth 1988, no writ); *see also Blankenship v. Kerr County,* 878 F.2d 893, 897 (5th Cir. 1989), other "courts of appeals have not fully embraced [its] holding." *Chiles v. Chiles,* 779 S.W.2d 127, 130 (Tex.App.—Houston [14th Dist.1989, writ denied). Moreover, some federal decisions have dealt with *Garrard* by limiting the decision to its particular facts. For example, in *Harmon v. Grande Tire Co.,* 821 F.2d 252, 258 (5th Cir.1987), decided shortly after *Garrard,* the court stated that "[w]hile the majority opinion in *Garrard* is broadly written, we read it as being directed only to the matter of proof." The court thus concluded that *Garrard* did not create a new duty that would allow a non-eyewitness bystander to recover for negligently inflicted emotional distress. *Id. See also In re Air Crash at Dallas/Ft. Worth Airport,* 856 F.2d 28 (5th Cir.1988). In *Fiorenza v. First City Bank–Central,* 710 F.Supp. 1104, 1105 (E.D.Tex.1988), the court held that "[t]he Texas Supreme Court does not yet recognize a separate cause of action in the employee/employer relationship for negligent infliction of emotional distress,"

apparently concluding that *Garrard* was limited to its facts. Professor Crump, one of Boyles' appellate counsel, has argued that "[i]t is important ... not to lose sight of the contractual relationship between hospital and patient as the source of the underlying duty [in *Garrard*]." David Crump, *Evaluating Independent Torts Based upon "Intentional" or "Negligent" Infliction of Emotional Distress: How Can We Keep the Baby From Dissolving in the Bath Water?,* 34 Ariz.L.Rev. 439, 458 (1992).

Considering our opinions and those of other Texas courts, as well as the law in most American jurisdictions, *Garrard* could fairly be characterized as an anomaly rather than a landmark. We believe the jurisprudence of our state is better served by overruling *Garrard*'s broad language outright, rather than ignoring it as in *Freeman,* limiting the case to its facts as in *Harmon* and *Delta,* or pretending that the concurring opinion was in fact the rationale of the majority.

By overruling the language of *Garrard,* we hold only that there is no general duty not to negligently inflict emotional distress. Our decision does not affect a claimant's right to recover mental anguish damages caused by defendant's breach of some other legal duty. *See, e.g., Fisher v. Coastal Transp. Co.,* 149 Tex. 224, 230 S.W.2d 522 (1950) (negligent infliction of direct physical injury); *Moore v. Lillebo,* 722 S.W.2d 683 (Tex.1986) (wrongful death); *Fisher v. Carrousel Motor Hotel, Inc.,* 424 S.W.2d 627 (Tex.1967) (battery); *Stuart v. Western Union Tel. Co.,* 66 Tex. 580, 18 S.W. 351 (1885) (failure of telegraph company to timely deliver death message); *Billings v. Atkinson,* 489 S.W.2d 858 (Tex.1973) (invasion of privacy); *Leyendecker & Assocs., Inc., v. Wechter,* 683 S.W.2d 369 (Tex.1984) (defamation); *Pat H. Foley & Co. v. Wyatt,* 442 S.W.2d 904 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ ref'd n.r.e.) (negligent handling of corpse).

■ Also, our holding does not affect the right of bystanders to recover emotional distress damages suffered as a result of witnessing a serious or fatal accident.

Texas has adopted the bystander rules originally promulgated by the California Supreme Court in *Dillon v. Legg,* 68 Cal.2d 728, 69 Cal.Rptr. 72, 80, 441 P.2d 912, 920 (1968):

(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it;

(2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence; and

(3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

*Freeman v. City of Pasadena,* 744 S.W.2d 923 (Tex.1988). *See also Reagan v. Vaughn,* 804 S.W.2d 463, 466–67 (Tex. 1990). The policy concerns that require limiting the emotional distress cause of action in the direct victim case generally do not apply in the bystander case. Before a bystander may recover, he or she must establish that the defendant has negligently inflicted serious or fatal injuries on the primary victim.

■ We emphasize that we are not *broadening* a claimant's right to recover mental anguish damages caused by breach of a particular duty; we leave such right unaffected. For example, a claimant may not recover mental anguish damages in connection with negligent misrepresentation. *Federal Land Bank Assoc. v.*

*Sloane,* 825 S.W.2d 439 (Tex.1991). Also, mental anguish damages may not be recovered under the Texas Deceptive Trade Practices Act, Tex.Bus. & Com.Code §§ 17.41–17.63, absent proof of a willful or grossly negligent violation. *See Luna v. North Star Dodge Sales, Inc.,* 667 S.W.2d 115 (Tex.1984); *Duncan v. Luke Johnson Ford, Inc.,* 603 S.W.2d 777 (Tex.1980). Our holding today does not extend these rules.

■ We also are not imposing a requirement that emotional distress manifest itself physically to be compensable. As explained in *Garrard,* the sole purpose of the physical manifestation rule is to ensure the genuineness of claims for emotional distress. 730 S.W.2d at 652. *Garrard* criticized this requirement as both under- and overinclusive, *id.,* and we agree. *See* Julie A. Davies, *Direct Actions for Emotional Harm: Is Compromise Possible?,* 67 Wash.L.Rev. 1, 24–25 (1992) (the physical manifestation rule "has been criticized on the ground that it has no obvious relation to emotional harm"). Where emotional distress is a recognized element of damages for breach of a legal duty, the claimant may recover without demonstrating a physical manifestation of the emotional distress. This has long been the rule, even before *Garrard. See, e.g., Leyendecker & Assocs., Inc., v. Wechter,* 683 S.W.2d 369, 374 (Tex.1984).

Most other jurisdictions do not recognize a general duty not to negligently inflict emotional distress. Many limit recovery by requiring proof of a physical manifestation.[2] Others allow recovery where the

2. *See,* e.g., *Keck v. Jackson,* 122 Ariz. 114, 115, 593 P.2d 668, 669 (1979); *Towns v. Anderson,* 195 Colo. 517, 579 P.2d 1163, 1165 (1978); *Robb v. Pennsylvania R.R.,* 210 A.2d 709, 715 (Del. 1965); *Champion v. Gray,* 478 So.2d 17 (Fla. 1985); *Hamilton v. Powell, Goldstein, Frazer & Murphy,* 252 Ga. 149, 311 S.E.2d 818 (1984); *Hatfield v. Max Rouse & Sons Northwest, Inc.,* 100 Idaho 840, 851, 606 P.2d 944, 955 (1980); *Hoard v. Shawnee Mission Medical Ctr.,* 233 Kan. 267, 662 P.2d 1214 (1983); *Vance v. Vance,* 286 Md. 490, 408 A.2d 728 (1979); *Payton v. Abbott Labs,* 386 Mass. 540, 437 N.E.2d 171, 174 (1982); *Daley v. LaCroix,* 384 Mich. 4, 179 N.W.2d 390, 395 (1970); *Okrina v. Midwestern Corp.,* 282 Minn. 400, 165 N.W.2d 259 (1979); *Sears, Roebuck & Co. v. Young,* 384 So.2d 69, 71

(Miss.1980); *Corso v. Merrill,* 119 N.H. 647, 406 A.2d 300 (1979); *Jines v. City of Norman,* 351 P.2d 1048, 1052 (Okla.1960); *Melton v. Allen,* 282 Or. 731, 580 P.2d 1019, 1021–22 (1978); *Banyas v. Lower Bucks Hosp.,* 293 Pa.Super. 122, 437 A.2d 1236, 1239 (1981); *Reilly v. United States,* 547 A.2d 894, 895 (R.I.1988); *Dooley v. Richland Memorial Hospital,* 283 S.C. 372, 322 S.E.2d 669 (1984); *Chisum v. Behrens,* 283 N.W.2d 235, 240 (S.D.1979); *Laxton v. Orkin Exterminating Co.,* 639 S.W.2d 431, 433–434 (Tenn.1982); *Vaillancourt v. Medical Ctr.,* 139 Vt. 138, 425 A.2d 92, 95 (1980); *Hughes v. Moore,* 214 Va. 27, 197 S.E.2d 214, 219 (1973); *Meracle v. Children's Serv. Soc'y,* 149 Wis.2d 19, 437 N.W.2d 532 (1989).

claimant establishes the breach of some independent duty.[3] A few jurisdictions recognize a general right to recover for negligently inflicted emotional distress,[4] but these jurisdictions are squarely in the minority.

We find the experience in California to be instructive. In *Molien v. Kaiser Foundation Hospitals*, 27 Cal.3d 916, 167 Cal. Rptr. 831, 838–39, 616 P.2d 813, 820–21 (1980), the California Supreme Court abolished the physical injury requirement, apparently creating an independent cause of action for negligently inflicted "serious" emotional distress. Nine years later, however, the court declared that "the *negligent* causing of emotional distress is not an independent tort....", *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.*, 48 Cal.3d 583, 257 Cal.Rptr. 98, 101, 770 P.2d 278, 281 (1989), and that damages are recoverable only where there is a "breach of a duty owed the plaintiff that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two." *Id.* 257 Cal. Rptr. at 102, 770 P.2d at 282. In another case decided shortly after *Marlene F.*, the California Supreme Court further explained as follows:

> [I]t is clear that foreseeability of the injury alone is not a useful "guideline" or a meaningful restriction on the scope of the [negligent infliction of emotional distress] action. The *Dillon* experience confirms, as one commentator observed, that "[f]oreseeability proves too much.... Although it may set tolerable limits for most types of physical harm, it provides virtually no limit on liability for nonphysical harm." [citing Rabin, *Tort Recovery for Negligently Inflicted Economic Loss: A Reassessment*, 37 Stan. L.Rev. 1513, 1526 (1985) ]. It is apparent

that reliance on foreseeability of injury alone in finding a duty, and thus a right to recover, is not adequate when the damages sought are for an intangible injury. In order to avoid limitless liability out of all proportion to the degree of a defendant's negligence, and against which it is impossible to insure without imposing unacceptable costs on those among whom the risk is spread, the right to recover for negligently caused emotional distress must be limited.

*Thing v. La Chusa*, 48 Cal.3d 644, 257 Cal.Rptr. 865, 877–78, 771 P.2d 814, 826–27 (1989).

Last year, the court confirmed that *Molien* should not be relied on as creating an independent tort for negligent infliction of emotional distress, but that recovery may lie "where a duty arising from a preexisting relationship is negligently breached." *Burgess v. Superior Court*, 2 Cal.4th 1064, 9 Cal.Rptr.2d 615, 619, 831 P.2d 1197, 1201 (1992). In *Burgess*, the plaintiff sued her obstetrician for emotional distress caused by the doctor's negligent delivery of the plaintiff's child. The court viewed the claim as a traditional professional malpractice cause of action, which, under California law, supported mental anguish damages. *Id.* 9 Cal.Rptr.2d at 621, 831 P.2d at 1203. The duty allegedly breached was that arising from the doctor-patient relationship. *Id.*

Some courts have recognized an independent cause of action for "serious" or "severe" emotional distress. *See Schultz v. Barberton Glass Co.*, 4 Ohio St.3d 131, 447 N.E.2d 109 (1983); *Bass v. Nooney Co.*, 646 S.W.2d 765 (Mo.1983); *Rodrigues v. State*, 52 Haw. 156, 472 P.2d 509 (1970). This standard, however, fails to delineate meaningfully those situations where recovery

---

**3.** *See Burgess v. Superior Court*, 2 Cal.4th 1064, 9 Cal.Rptr.2d 615, 831 P.2d 1197 (1992); *Corgan v. Muehling*, 143 Ill.2d 296, 158 Ill.Dec. 489, 574 N.E.2d 602 (1991); *Oswald v. Legrand*, 453 N.W.2d 634 (Iowa 1990); *Clomon v. Monroe City Sch. Bd.*, 572 So.2d 571 (La.1990).

**4.** *See Taylor v. Baptist Medical Ctr., Inc.*, 400 So.2d 369 (Ala.1981); *Montinieri v. Southern New England Tel. Co.*, 175 Conn. 337, 398 A.2d

1180 (1978); *Rodrigues v. State*, 52 Haw. 156, 472 P.2d 509 (1970); *Gammon v. Osteopathic Hosp. of Maine, Inc.*, 534 A.2d 1282 (Me.1987); *Johnson v. Supersave Markets, Inc.*, 211 Mont. 465, 686 P.2d 209 (1984); *Bass v. Nooney Co.*, 646 S.W.2d 765 (Mo.1983); *Johnson v. Ruark Obstetrics and Gynecology Assoc.*, 327 N.C. 283, 395 S.E.2d 85 (1990); *Schultz v. Barberton Glass Co.*, 4 Ohio St.3d 131, 447 N.E.2d 109 (1983).

should be allowed. As one commentator has explained:

> It is difficult to imagine how a set of rules could be developed and applied on a case-by-case basis to distinguish severe from nonsevere emotional harm. Severity is not an either/or proposition; it is rather a matter of degree. Thus, any attempt to formulate a general rule would almost inevitably result in a threshold requirement of severity so high that only a handful would meet it, or so low that it would be an ineffective screen. A middle-ground rule would be doomed, for it would call upon courts to distinguish between large numbers of cases factually too similar to warrant different treatment. Such a rule would, of course, be arbitrary in its application.

Richard N. Pearson, *Liability to Bystanders for Negligently Inflicted Emotional Harm—A Comment on the Nature of Arbitrary Rules*, 34 U.Fla.L.Rev. 477, 511 (1982).

We therefore reverse the judgment of the court of appeals in favor of Kerr on the ground of negligent infliction of emotional distress.[5]

### III

The dissent recognizes that foreseeability of injury is not an adequate basis to impose liability for unintentionally inflicted emotional distress. 855 S.W.2d at 614. The dissent therefore proposes a test that would allow recovery where defendant breaches "some legal duty not to cause harm to another beyond that created by foreseeability...." 855 S.W.2d at 615. This duty may arise "from the voluntary undertaking of an affirmative action that puts another at risk...." *Id.* We believe that the dissent's "duty" limitation is no limitation at all. A "voluntary undertaking ... that puts another at risk" is simply

another way of saying that the emotional distress is foreseeable.

The dissent also would find a duty based on a "special relationship" between the parties. We agree that certain relationships may give rise to a duty which, if breached, would support an emotional distress award. *See Stuart v. Western Union Tel. Co.*, 66 Tex. 580, 18 S.W. 351 (1885) (failure of telegraph company to timely deliver death message); *Pat H. Foley & Co. v. Wyatt*, 442 S.W.2d 904 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ ref'd n.r.e.) (funeral home's negligent handling of a corpse). However, there must be some specific duty of care that, under the law, arises from the relationship. The dissent can point to no such duty in this case. The law has heretofore not sought to impose specific legal duties based solely on a personal relationship, even an intimate one. The duties that Boyles owed to Kerr included the general duty not to willfully invade the other's privacy and the duty not to intentionally inflict emotional distress by outrageous conduct. It is unnecessary to recognize some other "special duty" based on the parties' intimate relationship to provide a basis for recovery.

### IV

Kerr argues that even if we do not recognize recovery for negligent infliction of emotional distress, we should recognize a cause of action for *grossly* negligent infliction of emotional distress. She contends that the judgment should be affirmed under this alternative cause of action as she obtained a jury finding, in connection with her claim for punitive damages, that Boyles was grossly negligent.

Even assuming that such a cause of action were recognized in Texas, Kerr could not recover on it under the record before us because she did not plead or preserve this theory of recovery.[6] Kerr's trial

---

**5.** Boyles also argues that Kerr cannot recover for intentional conduct under a negligence theory, citing *Fulmer v. Rider*, 635 S.W.2d 875, 881 (Tex.App.—Tyler 1982, writ ref'd n.r.e.); *National Union Fire Ins. Co. v. Bourn*, 441 S.W.2d 592, 596 (Tex.Civ.App.—Fort Worth 1969, writ ref'd n.r.e.). Because we decide the case on other

grounds, we do not reach this issue, and we express no opinion thereon.

**6.** On rehearing, Kerr equates this purported cause of action with intentional or reckless infliction of emotional distress under Restatement (Second) of Torts § 46, contending that gross negligence and recklessness refer to the same

pleading asserted claims only for intentional invasion of privacy, negligent invasion of privacy and negligent infliction of emotional distress.[7] The petition does assert that Boyles' conduct was "willful," "malicious," and "grossly negligent," but these allegations were made only in support of the punitive damages claim, not as a separate cause of action. Moreover, the petition never asserts that Boyles' conduct was outrageous.

■ A pleading should contain "a short statement of the cause of action sufficient to give fair notice of the claim involved...." Tex.R.Civ.P. 47(a). We have recognized that, in the absence of special exceptions, the petition should be construed liberally in favor of the pleader. *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex.1982). A court should uphold the petition as to a cause of action that may be reasonably inferred from what is specifically stated, even if an element of the cause of action is not specifically alleged. *See id.; Gulf, Colo. & S.F. Ry. v. Bliss*, 368 S.W.2d 594, 599 (Tex.1963). In the present case, however, it may not be reasonably inferred that Kerr intended to plead an independent cause of action for grossly negligent infliction of emotional distress. Her petition contained specific causes of action on which she was seeking to recover, and there was nothing contained in the petition that gave fair notice to Boyles that Kerr would also seek to recover under a separate cause of action for "grossly negligent" infliction of emotional distress by outrageous conduct.

Nor was this cause of action tried by consent, as Kerr's presentation of the evidence did not put Boyles on notice that she was seeking to recover under such a theory. Although Kerr's proof was perhaps relevant to a Restatement § 46 cause of action, it was also relevant to her pled

causes of action, and thus Boyles' failure to object did not constitute trial by consent. *See Austin Area Teachers Fed. Credit Union v. First City Bank—Northwest Hills*, 825 S.W.2d 795, 800 (Tex.App.—Austin 1992, writ denied); *City of San Antonio v. Lopez*, 754 S.W.2d 749, 751 (Tex.App.—San Antonio 1988, writ denied).

Any remaining doubt about Kerr's intention was laid to rest by her actions in response to Boyles' motion for instructed verdict. When Boyles' counsel contended that Kerr could not recover for negligence because the "the case has been tried from start to finish as an intentional tort ...," Kerr's counsel objected strenuously, pointedly remarking that "should the Court adopt counsel's suggestion, counsel would have dropped his client in the grease in that he would have gotten totally out of coverage." Moreover, before the court ruled on Boyles' motion, Kerr's counsel abandoned her actions for intentional invasion of privacy and negligent invasion of privacy,[8] explaining that

> rather than get into a complicated charge and long drawn questions that might not be clearly defined, we have reduced our offensive thrust by way of our requested submissions to negligence—*negligent infliction of emotional distress and mental anguish.*

(emphasis supplied). Kerr thus unequivocally waived all theories other than negligent infliction of emotional distress, and the court submitted only that theory to the jury. Regardless of the proof, she cannot now claim that she either pled or tried by consent an action on any separate theory.

## V

In rejecting negligent infliction of emotional distress as an independent cause of

---

mental state in Texas. She further argues that outrageous conduct, a necessary element under Section 46, is established in the record as a matter of law. Because we conclude that grossly negligent infliction of emotional distress was not plead as a separate cause of action, we express no opinion on these issues.

7. Because Kerr's earlier petitions are not contained in the appellate record, we are unable to

determine whether intentional or reckless infliction of emotional distress was previously pled and abandoned.

8. We have previously recognized a cause of action for intentional invasion of privacy. *See Billings v. Atkinson*, 489 S.W.2d 858, 860–61 (Tex.1973).

action, we stated in the original opinion that "[t]ort law cannot and should not attempt to provide redress for every instance of rude, insensitive or distasteful behavior, even though it may result in hurt feelings, embarrassment, or even humiliation." We made clear, however, that we did not consider Boyles' conduct to fall into that category, stating in part as follows:

> The tort system can and does provide a remedy against those who engage in such conduct. But an independent cause of action for negligent infliction of emotional distress would encompass conduct far less outrageous than that involved here, and such a broad tort is not necessary to allow compensation in a **truly egregious case** such as this.

(emphasis supplied). We denied recovery not because Boyles breached no duty toward Kerr, but because the only theory which she chose to assert—negligent infliction of emotional distress—was overly broad and would encompass other cases involving merely rude or insensitive behavior. We reaffirm that conclusion today.

The original dissent mischaracterized the Court's opinion, stating that "[t]o the majority what happened to this woman is indistinguishable from a mere trifle...." 855 S.W.2d at 618. According to the dissent, the Court held that Boyles owed and breached no duty toward Kerr. The dissent referred to "the majority's unilateral choice to reject Susan Kerr's claim that these four men owed a duty not to inflict severe harm on her," *id.* at 618, and later stated that "[i]n refusing to discuss why no duty arises from Boyles' sexual exploitation of Susan Kerr, the majority abdicates its responsibility." *Id.* at 617–618.

These characterizations are completely inaccurate. The Court expressly noted that Kerr's injuries were not a "trifle." It did not hold that Boyles breached no tort duty, and it labeled Boyles' conduct as

"truly egregious." Susan Kerr did not misunderstand our original opinion. She contends on rehearing that our characterizations were sufficiently strong to constitute a holding that Boyles' conduct was outrageous as a matter of law:

> No new jury is needed to say Dan Boyles' conduct was outrageous. This fact is established in this record as a matter of law. This Court has stated as much in its majority opinion.

Motion for Rehearing at 9. Although our characterizations might have suggested this conclusion, we did not then, nor do we now, intimate any holding on this issue, as we are remanding this cause for a new trial. Nevertheless, some amici curiae on rehearing make assertions more akin to the dissent's inventions than our actual holdings. The Association of Women Attorneys, for example, asserts that we held that Boyles' conduct was as a matter of law *not outrageous*, when, as discussed above, our opinion was read by Kerr as supporting the opposite result. The Women's Advocacy Project,[9] contends that "this Court has summarily removed the only redress for the tens of thousands of Texans, both men and women, who are survivors of sexual and emotional abuse," when in fact we remand for a trial on other actionable grounds. Finally, the brief of the Women and the Law Section of the State Bar of Texas asserts that "if the tables had been turned, and Kerr had peddled [10] the videotape as a vignette of Boyles' sexual performance ..., the all-male majority in this case would have reached a decidedly different result." This is a grave charge, and one wholly without merit. The cause of action under review in this case would be available to both men and women to be used against both men and women, and our decision reflected our considered judgment of the appropriate development of the com-

**9.** According to its amicus brief, the Women's Advocacy Project is a statewide agency providing social and legal services to victims of sexual, physical, and emotional abuse.

**10.** This amicus also charges that the Court, in the original opinion, "fail[ed] to mention in its summary of the facts that Boyles charged and

collected money to see the tape." This "charging and collecting" of money consisted of one person, after viewing the tape, telling Boyles not to "worry" about a $20–$25 football bet. There was no evidence of an advance agreement that the debt would be forgiven or that Boyles solicited this consideration.

mon law of Texas. *See, e.g., Twyman v. Twyman,* 859 S.W.2d 619, 623–624 (Tex. 1993). One might as well argue that the dissenters in *Bexar County Sheriff's Civil Service Comm. v. Davis,* 802 S.W.2d 659, 665 (Tex.1990) (Doggett, J., dissenting), were biased against women because they voted that a police captain fired for repeated sexual harassment of women subordinates had been denied due process.

## VI

■ Kerr cannot recover based on the cause of action under which she proceeded. It may well be, however, that she failed to assert and preserve alternative causes of action because of her reliance on our holding in *Garrard.* We have broad discretion to remand for a new trial in the interest of justice where it appears that a party may have proceeded under the wrong legal theory. *See American Title Ins. Co. v. Byrd,* 384 S.W.2d 683 (Tex.1964); *Dahlberg v. Holden,* 150 Tex. 179, 238 S.W.2d 699 (1951). Remand is particularly appropriate where the losing party may have presented his or her case in reliance on controlling precedent that was subsequently overruled. *See Murray v. San Jacinto Agency, Inc.,* 800 S.W.2d 826, 830 (Tex.1990) (case remanded because plaintiff might have relied on subsequently overruled precedent in preparing her summary judgment response); *Scott v. Liebman,* 404 S.W.2d 288, 294 (Tex.1966) (remand in the interest of justice appropriate where defendant requested jury issues in reliance on precedent no longer controlling). *See generally* Robert W. Calvert, *"... In the Interest of Justice.",* 4 St. Mary's L.J. 291 (1972). It is even more appropriate where we have also subsequently given formal recognition to a cause of action which might be applicable to the facts of this case. *See Twyman, supra* (expressly recognizing the tort of intentional infliction of emotional distress). We therefore reverse the judgment of the court of appeals and remand this cause to the trial court for a new trial.

---

1. Justice Doggett does not offer any explanation for Ms. Kerr's decision to waive her willful invasion of privacy claim.

---

Concurring opinion on rehearing by GONZALEZ, J.

Supplemental dissenting opinion on rehearing by DOGGETT, J., joined by GAMMAGE and SPECTOR, JJ.

## CONCURRING OPINION ON MOTION FOR REHEARING

[Filed May 5, 1993]

GONZALEZ, Justice.

What happened to Ms. Kerr in this case is grossly offensive conduct which no one should tolerate. As such the law should, and does, provide a remedy. However, as a result of the posturing by the dissenting justices, what has been lost in the shuffle is the pivotal role that insurance played in this case.

The young men who videotaped Ms. Kerr's sexual encounter **intentionally** positioned the camera to capture the event on film. They **intentionally** showed the videotape to their friends. There was nothing accidental or careless about their outrageous conduct. However, Ms. Kerr **intentionally** gave up her right to receive redress under two other theories of recovery which she had pleaded: willful invasion of privacy,[1] a cause of action which was recognized by this Court sixteen years **before** the jury verdict in this case in *Billings v. Atkinson,* 489 S.W.2d 858, 860–61 (Tex. 1973), and intentional infliction of emotional distress, a cause of action that was recognized by the RESTATEMENT (SECOND) OF TORTS in 1965 and was adopted by the Beaumont court of appeals four years prior to the jury verdict in this case in *Tidelands Automobile Club v. Walters,* 699 S.W.2d 939 (Tex.App.—Beaumont 1985, writ ref'd n.r.e.) (relying on *Duty v. General Finance Co.,* 154 Tex. 16, 273 S.W.2d 64 (1954)). Therefore, contrary to Justice Doggett's suggestion in his dissent, these two causes of action were established in the jurisprudence of this state prior to Ms. Kerr's case proceeding to trial. Her lawyers gambled

when they made a strategic decision to proceed only with the questionable legal theory of negligent infliction of emotional distress.

At the time this case was tried, there was controversy and confusion about the state of the law regarding the tort of negligent infliction of emotional distress. *See In re Air Crash at Dallas/Ft. Worth Airport*, 856 F.2d 28 (5th Cir.1988); *Harmon v. Grande Tire Co., Inc.*, 821 F.2d 252 (5th Cir.1987). Our Court had limited this tort as a separate and independent cause of action to negligent handling of a corpse, *see St. Elizabeth Hospital v. Garrard*, 730 S.W.2d 649, 652 (Tex.1987), and "bystander" cases which allow those who contemporaneously perceive an accident involving a close relative to recover for negligently inflicted emotional distress. *See Freeman v. Pasadena*, 744 S.W.2d 923, 923–24 (Tex. 1988); *see also Reagan v. Vaughn*, 804 S.W.2d 463 (Tex.1990) (recovery for negligent infliction of emotional distress denied because Bystander Rule not satisfied). In *Reagan*, the Court did not even mention our prior holding in *Garrard*, much less state that *Garrard* had created an all encompassing tort of negligent infliction of emotional distress. Therefore, to the extent that the 5–4 opinion in *Garrard* can be read otherwise, it is an aberration, and for the reasons stated in the majority opinion, it is out of step with the majority view.

It does not take a rocket scientist to determine why Ms. Kerr's lawyers elected to proceed solely on the tort of negligent infliction of emotional distress. In fact, her lawyers explained their strategy to the trial court. At the close of the evidence, the defense attorneys made a motion for directed verdict on the negligence theories of recovery:

*The COURT:* Under what basis?

*MR. DRABECK* [defendant's attorney]: Under the basis that intentional tort cannot be the result of negligent conduct. That the case has been tried from start to finish as an intentional tort by the lawyers over here. We'd ask that the Court recognize that. There has never been one question asked of anybody as to whether or not they failed to exercise ordinary care on the occasion in question, whether they negligently inflicted some sort of mental distress on her. It would appear by virtue of the record as placed by the plaintiffs themselves that every single question was directed toward intentional conduct.

*MR. KRIST:* [plaintiff's attorney]: Your Honor, the—to begin with, let the record reveal, for whatever purposes, it might be at a later date, that **should the Court adopt counsel's suggestion, counsel would have dropped his client in the grease in that he would have gotten totally out of coverage—**

*THE COURT:*

It's your case ... and I am going to give you your requested charge. If you don't ask for an intentional tort, I ain't asking it, ... I'm not going to make you prosecute a lawsuit that you didn't want to prosecute. So don't worry about that. Nobody is going to get intentional tort unless they ask for it.

In Texas, a home owners policy covers only accidents or careless conduct and excludes intentional acts. Ms. Kerr's lawyers may have believed that if they obtained a judgment declaring that Boyles' conduct came within the rubric of "negligence" (inadvertence or carelessness), they could tap the homeowners policies owned by the parents of Boyles and the other defendants. Thus, this case has a lot to do with a search for a "deep pocket" who can pay. If the purpose of awarding damages is to punish the wrongdoer and deter such conduct in the future, then the individuals responsible for these reprehensible actions are the ones who should suffer, not the people of Texas in the form of higher insurance premiums for home owners.

This case has nothing to do with gender-based discrimination or an assault on women's rights. There is no reason, other than stereotype, to assume that emotional distress is unique only to women. In fact, as noted in Justice Cornyn's plurality opinion in *Twyman v. Twyman*, 855 S.W.2d 619, 623 (Tex.1993), almost as many men as women have brought claims for negligent

infliction of emotional distress. Furthermore, women as well as men will have to pay higher premiums for their home owners policies if the dissenting justices' views were to prevail.

In sum, Susan Kerr does not need this amorphous cause of action in order to obtain a judgment against the parties actually responsible for her traumatic experience. I concur in the Court's judgment and opinion.

## SUPPLEMENTAL DISSENTING OPINION ON MOTION FOR REHEARING [1]

[Filed May 5, 1993]

DOGGETT, Justice.

Today the majority reaffirms its recent reversal of the judgment for Susan Kerr. What has occurred here with the issuance of a revised opinion on rehearing is roughly comparable to Dan Boyles having erased those portions of the videotape featuring his friends making crude remarks, then replaying the remainder of the tape so damaging to Susan Kerr. Excising a few insensitive phrases in no way alters the insensitivity of the majority's opinion.

Continuing to reject *St. Elizabeth Hospital v. Garrard*, 730 S.W.2d 649 (Tex.1987), the majority has, according to the Women and the Law Section of the State Bar of Texas, "turn[ed] back the clock to a time when the sexual exploitation of unwilling women was socially acceptable, without regard to negligently inflicted emotional distress." Amicus Brief at 7. *See also* pro se amicus letter brief of a group of women dentists at 1 ("decision sends a message to the women of Texas that sexual harassment and abuse is OK"). No matter how intolerable the negligent conduct, no matter how severe the resulting emotional harm, relief is declared unwarranted. I believe that this court should not reject the respect for human dignity affirmed in *St. Elizabeth Hospital.*

Normally a court that boldly overrules controlling precedent to declare no duty is owed to someone like Susan Kerr at least provides some explanation of its reasoning. This the majority again steadfastly refuses to do. Even while recognizing that "certain relationships may give rise to a duty which, if breached, would support an emotional distress award," 855 S.W.2d at 600, the majority refuses to explain why Boyles does not owe such a duty to Susan Kerr. The existence of a duty is a question of law that this court must decide. Totally ignored today is the most recent statement of the law by this court on this very subject:

> In determining whether the defendant was under a duty, the court will consider several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. Of all these factors, foreseeability of the risk is "the foremost and dominant consideration."

*Greater Houston Transportation Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990) (citations omitted). The majority once again wholly refuses to analyze these factors because any fair, balanced analysis would produce a different result.[2]

Conceding the foreseeability of emotional harm to Susan Kerr caused by making and replaying the videotape, the majority summarily dismisses this "foremost and dominant consideration" as an inadequate basis to impose liability for unintentionally inflicted emotional distress. How, then, do the other factors weigh? What is the social utility of Boyles' conduct? What is the

---

**1.** My dissenting opinion of December 2, 1992, is not withdrawn and the following is offered only as a supplement to that writing, a copy of which is attached as an appendix. Indeed, the magnitude of both the injustice which has occurred here and the determination of the majority to divert attention therefrom can only be fully appreciated by comparing the majority's writing of today with that of December 2. *See* 36 Tex. Sup.Ct.J. 231 (Dec. 2, 1993).

**2.** In a separate opinion today, Justice Gonzalez, the author of *Greater Houston*, makes no effort to reconcile or apply his prior writing, but only rationalizes the action taken here against Susan Kerr. 855 S.W.2d at 604 (Gonzalez, J., concurring on rehearing).

magnitude of guarding against the injury—how difficult is it for Boyles to refrain from videotaping and displaying his secret tape compared to imposing on Kerr the obligation to protect herself by searching a room for hidden cameras? Is it too great a burden to require Boyles to be responsible for his actions?

Rather than explaining why Dan Boyles owed no duty not to negligently inflict emotional distress on Susan Kerr, the majority offers the handy excuse that it has belatedly discovered a brand new, narrowly-drawn alternative intentional infliction cause of action. *Twyman v. Twyman,* 855 S.W.2d 619 (Tex.1993), is seized upon as essentially a companion case to *Boyles v. Kerr,* then used as an excuse to avoid the question of duty here. Because Susan Kerr now has available an action for intentional infliction of emotional distress, the majority summarily declares: "It is unnecessary" to examine duty further. 855 S.W.2d at 600. This is tantamount to concluding that a court should not hold accountable one who, through negligence, discharges a loaded gun within inches of another's head because there is a duty not to shoot intentionally. This logic fossilizes the concept of duty, precluding any further expansion and foreshadowing further retreats far beyond today's misadventure.

Why should Boyles be held to a lesser standard than morticians and telegraph companies?[3] Why should our law of duty be irretrievably locked in a pre-video era?[4] The majority will not say. What has happened to this court's multiple pronouncements that the common law concept of duty is not frozen or stagnant, but must change to reflect current social conditions and technological advances?[5] In turning back the clock, the majority has turned its back on those who suffer severe harm in new ways, and on women in particular. *See Twyman,* 855 S.W.2d at 640 (Spector, J., dissenting).

Why is the door closed for Susan Kerr? Why does her truly unfortunate situation necessitate the retreat from *St. Elizabeth Hospital,* which recognized a cause of action for negligently inflicted emotional distress? This abrupt reversal in the law, we discover, is not attributable to difficulties in her particular case but to the majority's fear of " 'limitless liability.' " 855 S.W.2d at 599.

Perhaps Justice Gonzalez is correct in asserting that insurance "played the pivotal role in this case," 855 S.W.2d at 603 (Gonzalez, J., concurring on rehearing)—pivotal in the sense that excessive concern for the effect of every opinion on insurance companies seems to have become the predominant and overriding issue here, even to the exclusion of a woman's most basic rights. Susan Kerr loses today because of the majority's misdirected concern about the potential liability of insurers for some

---

**3.** *See* 855 S.W.2d at 597–598 (discussing previously recognized duties imposed on some not to negligently inflict emotional distress, citing *"Stuart v. Western Union Tel. Co.,* 66 Tex. 580, 18 S.W. 351 (1885) (failure of telegraph company to timely deliver death message); *Pat H. Foley & Co. v. Wyatt,* 442 S.W.2d 904 (Tex.Civ. App.—Houston [14th Dist.] 1969, writ ref'd n.r.e.) (funeral home's negligent handling of a corpse).").

**4.** In a related context, the California Supreme Court emphasized the need for the law to keep pace with technology:

Development of photocopying machines, electronic computers and other sophisticated instruments have accelerated the ability ... to intrude into areas which a person normally chooses to exclude from prying eyes and inquisitive minds. Consequently judicial interpretations of the reach of the constitutional protection of individual privacy must keep pace with the perils created by these new devices.

*Burrows v. Superior Court,* 13 Cal.3d 238, 118 Cal.Rptr. 166, 529 P.2d 590, 596 (1974).

**5.** *See Reagan v. Vaughn,* 804 S.W.2d 463, 465 (Tex.1990); *El Chico v. Poole,* 732 S.W.2d 306, 309–10 (Tex.1987); *Sanchez v. Schindler,* 651 S.W.2d 249, 252 (Tex.1983). *See also* J. Hadley Edgar, Jr. & James B. Sales, 1 Texas Torts & Remedies § 1.03[2] (1990) (duty dependent upon "contemporary attitudes"); William W. Kilgarlin & Sandra Sterba–Boatwright, *The Recent Evolution of Duty in Texas,* 28 S.Tex.L.Rev. 241, 306 (1986) ("Tort law, in general, and duty, in particular, has long been the method of allocating the risks in society. When these risks change due to advanced technology and other factors, then it is necessary for duty to change as well.").

hypothetical rude behavior that might some day give rise to a lawsuit:

> We denied recovery ... because the only theory which [Kerr] chose to assert—negligent infliction of emotional distress—was overly broad and would encompass in other cases behavior that was merely rude or insensitive.

*Id.* at 602. Why not await that mythical case, if and when it ever arises, to address this question? If "merely rude and insensitive" behavior is involved in some future litigation, there will be ample opportunity for this majority to say so then instead of being wholly insensitive now. If, in fact, as the majority asserts, "this Court has never upheld a recovery under the *Garrard* tort," *id.* at 596, the fear of limitless liability has no foundation.

But what is most clear is that the tragic events that befell Susan Kerr—events described by the Association of Women Attorneys as "not mere name-calling" but "tantamount to rape" [6]—are all irrelevant. Indeed, the majority's insistence on reviewing Kerr's sexual history, a discussion wholly unnecessary to the legal issues presented, 855 S.W.2d at 594, is not dissimilar from a now rejected tactic frequently employed in the past against rape victims. *See* Tex. R.Crim.Ev. 412 (adopted to bar generally the common defense strategy of discussing a rape victim's prior sexual conduct); James A. Vaught & Margaret Henning, *Admissibility of a Rape Victim's Prior Sexual Conduct in Texas: A Contemporary Review and Analysis,* 23 St. Mary's L.J. 893 (1992). Today we should focus on the facts presented here, which amply demonstrate the very real emotional harm that Susan Kerr has truly suffered. Instead, she is damned with faint empathy,[7] reflecting little real concern for or understanding of her trauma.

In addition, Kerr is regrettably criticized for both relying upon a well-established cause of action under the existing decisional law of Texas and failing to pursue a claim that the majority insists it had never recognized until today's much delayed announcement in its new companion case, *Twyman.* Justice Gonzalez claims Kerr took a "strategic gamble" based on "a questionable legal theory" in pursuing a negligence action under *St. Elizabeth Hospital,* 730 S.W.2d 649 (Tex.1987), decided two years prior to the trial, rather than for intentional infliction of emotional distress under *Twyman,* a decision handed down four years after the jury verdict in this case. 855 S.W.2d at 604 (Gonzalez, J., concurring on rehearing).[8]

Although initially recognized by the majority as a rather clear pronouncement allowing recovery for negligently inflicted emotional distress, *St. Elizabeth Hospital* has, for the first time on rehearing, oddly become an "anomaly" that is "not entirely clear to the bench and bar," 855 S.W.2d at 602, and an "aberration" giving rise to "controversy and confusion." *Id.* at 604 (Gonzalez, J., concurring on rehearing). Both Chief Justice Phillips and Justice Gonzalez rely primarily on federal law for this strange new proposition, citing *In re Air Crash at Dallas/Ft. Worth,* 856 F.2d 28 (5th Cir.1988), and the decision upon which it relies, *Harmon v. Grande Tire Co.,* 821 F.2d 252 (5th Cir.1987). Yet the same Fifth Circuit in *Blankenship v. Kerr County,* 878 F.2d 893, 897 (5th Cir.1989), later made clear that the language relied upon from *Harmon* in the majority and concurring opinions today was "ambiguous dictum" that by no means undercut the Texas Supreme Court's having "unambiguously declared" in *St. Elizabeth Hospital* the exis-

6. Amicus Brief at 1–2.

7. Affecting an air of generosity, the majority recognizes that "Kerr's injuries were not a 'trifle,'" 855 S.W.2d at 602, and condemns Boyles' conduct as not in the "category" of "'rude, insensitive or distasteful behavior.'" *Id.* at 602.

8. Similarly regarding most recent precedent as tenuous, the majority repeatedly complains of

Susan Kerr's reliance on a previously well-accepted Texas Supreme Court opinion. *See* 855 S.W.2d at 602 ("[b]ecause Respondent proceeded below only on the theory of negligent infliction of emotional distress"); *id.* at 602 ("the only theory which she chose to assert—negligent infliction of emotional distress"); *id.* at 603 ("Kerr cannot recover based on the cause of action under which she proceeded").

tence of a cause of action for negligent infliction of emotional distress.

Not only is federal law misrepresented, but the numerous decisions of Texas appellate courts that had no difficulty comprehending the scope of *St. Elizabeth Hospital* are ignored.[9] Instead, the majority chooses to cite dictum from *Chiles v. Chiles*, 779 S.W.2d 127, 130 (Tex.App.—Houston [14th Dist.] 1989, writ denied), a single appellate opinion that is necessarily disapproved by the companion writing today in *Twyman*. That case presented only the issue of intentional infliction of emotional distress and held, contrary to *Twyman*, that such action could not be maintained in a divorce suit. Nor did that writing dispute this court's prior holding: *"St. Elizabeth Hospital v. Garrard ... established that proof of physical injury is no longer required to recover for negligent infliction of emotional distress."* 779 S.W.2d at 130.

To bootstrap its new discovery that the law of emotional distress is racked with confusion, the majority next relies on an article that originated in the appellate briefs in this case and was written by counsel for Dan Boyles. 855 S.W.2d at 597, citing David Crump, *Evaluating Indepen-*

*dent Torts Based upon "Intentional" or "Negligent" Infliction of Emotional Distress: How Can We Keep the Baby From Dissolving in the Bath Water?*, 34 Ariz. L.Rev. 439 (1992). As a final belated justification for its sudden awareness that this previously well-accepted law is now in disarray, the majority cites to Justice Gonzalez's concurring opinion not issued until today on rehearing. *Id.* at 596.

This self-created uncertainty is then quickly resolved with unqualified certainty—by barring completely the well-worn path of negligent infliction to those suffering severe emotional harm. The choice of action today is presented as "overruling *Garrard*'s broad language outright, ... ignoring it ..., limiting the case to its facts ... or pretending that the concurring opinion was in fact the rationale of the majority." *Id.* at 597. Most revealing is the majority's failure to even consider the option of simply respecting this court's prior decision as controlling precedent and allowing Susan Kerr to recover.

The path which the majority announces Susan Kerr should have followed—intentional infliction of emotional distress—is

9. *See, e.g., Campos v. Ysleta Gen. Hosp., Inc.,* 836 S.W.2d 791, 795 (Tex.App.—El Paso 1992, writ denied) ("negligent infliction of emotional distress" is "recognized as independent theor[y] of recovery in Texas"); *Dan Boone Mitsubishi, Inc. v. Ebrom,* 830 S.W.2d 334, 337 (Tex.App.—Houston [14th Dist.] 1992, writ denied) ("In *St. Elizabeth Hospital,* the right of a plaintiff to bring suit only for negligent infliction of mental anguish was upheld."); *C.T.W. v. B.C.G.,* 809 S.W.2d 788, 796 (Tex.App.—Beaumont 1991, no writ) ("In the case of *St. Elizabeth Hospital v. Garrard,* our Supreme Court ... recognize[d] a tort of negligent infliction of mental anguish."); *State Farm Auto. Ins. Co. v. Zubiate,* 808 S.W.2d 590, 599 (Tex.App.—El Paso 1991, writ denied) ("the Supreme Court fully recognized that proof of physical injury resulting from mental anguish is no longer an element of the common law action for negligent infliction of mental anguish"); *Massey v. Massey,* 807 S.W.2d 391, 397 (Tex.App.—Houston [1st Dist.] 1991, writ requested) ("Based upon the unlimited and unequivocal holding by the supreme court in *St. Elizabeth Hospital v. Garrard,* we hold that the tort of ... negligent infliction of emotional distress is an established cause of action that does not require proof of physical injury."); *McNamara v. Freedom Newspapers, Inc.,* 802 S.W.2d

901, 903 n. 2 (Tex.App.—Corpus Christi 1991, writ denied) ("The law of Texas also recognizes causes of action for ... negligent infliction of emotional distress."); *Dominguez v. Kelly,* 786 S.W.2d 749, 753 (Tex.App.—El Paso 1990, writ denied) ("The Appellant also correctly pleads a cause of action for the negligent infliction of mental anguish as sanctioned in *St. Elizabeth Hospital....*"); *Orkin Exterminating Co. v. Williamson,* 785 S.W.2d 905, 912 (Tex.App.—Austin 1990, writ denied) (In *St. Elizabeth Hospital,* "[t]he Texas Supreme Court has eliminated the 'physical manifestation' requirement as a prerequisite to the recovery of mental anguish damages in negligence actions."); *Texas Dep't of Corrections v. Winters,* 765 S.W.2d 531, 532 (Tex.App.—Beaumont 1989, writ denied) ("Damages for negligent infliction of mental anguish are now recoverable without proof of physical manifestation."); *City of Watauga v. Taylor,* 752 S.W.2d 199, 204 (Tex.App.—Fort Worth 1988, no writ) ("Proof of physical injury is no longer an element of the common law action for negligent infliction of mental anguish."); *Padget v. Gray,* 727 S.W.2d 706, 711 (Tex.App.—Amarillo 1987, no writ) ("Since the decision in *Hill v. Kimball,* 76 Tex. 210, 13 S.W. 59 (1890), Texas has recognized the right to recover for negligently inflicted emotional distress.").

one initially rejected in this very case [10] and which the author of today's majority opinion continues personally to view as rife with "difficulties." [11] Most likely being led down the garden path, Susan Kerr is now directed back to the trial court to pursue this new cause of action, in which those who are injured are "seldom successful." *Twyman*, 855 S.W.2d at 631 (Hecht, J., dissenting).

Rejected again today is a "moderate course crafted from Texas precedent and a growing body of law nationally that would limit liability for the trivial while recompensing the truly grievous," as outlined in my prior writing. 855 S.W.2d at 616 (Doggett, J., dissenting). Abolition of a well established cause of action should be a last resort employed only after modification and restriction have first been proven unsuccessful. As Justice Cornyn observes today in his companion writing in *Twyman*, any "well-established cause[ ] of action in Texas" can be attacked on grounds that

> judges and juries are guided by insufficient standards, that liability may be imposed arbitrarily, that reported cases either supporting or refusing to support an award of damages disclose no uniform pattern, and that the sensitivities of aggrieved people are entirely too subjective and unpredictable.

855 S.W.2d at 622. Oddly, Justice Cornyn congratulates the plurality on rejecting such an attack in *Twyman* while at the same time joining identical criticism in *Boyles* to justify evisceration of the tort of negligent infliction of emotional distress.

Not explaining this inconsistency, he declares himself enlightened keeper of the "middle ground," who leads the court in following well established law so that Texas can become "the forty-seventh state to adopt the tort of intentional infliction of emotional distress." *Id.* at 622. The false "middle ground" staked out in *Twyman* is between following existing Texas law permitting recovery for negligently inflicted emotional distress and rejecting an intentional tort that is "seldom successful," *id.* at 631 (Hecht, J., dissenting). In disavowing the previous law of Texas, the *Twyman* plurality only offers women a choice between slim and none.

The majority then rewrites its excuse for refusing to affirm the judgment for Susan Kerr on alternative grounds. In its prior opinion disregarding the jury's finding of gross negligence, the majority insisted that Kerr must lose because of her failure to submit a jury issue as to whether Boyles' conduct was outrageous. But now this approach must be abandoned. With the recognition of a cause of action for intentional infliction of emotional distress today in *Twyman* that encompasses even "reckless" conduct, the majority cannot explain why the finding of gross negligence already obtained here will not support recovery. [12] Nor is the majority willing to even consider a legal question that might call for their unqualified assessment of Boyles' behavior. While professing disapproval of his conduct, the majority hastens to add that it is not "intimat[ing] any holding" on the issue of whether his conduct is outra-

---

**10.** *See* 36 Tex.Sup.Ct.J. at 236 n. 10 (Dec. 2, 1992) ("this Court has never expressly recognized this cause of action [for intentional infliction of emotional distress], and need not reach the issue today"). Contrary to the assertions of Justice Gonzalez, 855 S.W.2d at 603 (Gonzalez, J., concurring on rehearing), it is not my writing but the majority opinion which he joined that expressed doubt as to the existence of a cause of action for intentional infliction of emotional distress. In the few months since joining that opinion, Justice Gonzalez now pronounces intentional infliction one of the "well-established theories of recovery" that Kerr wrongly and "intentionally gave up." *Id.* at 603.

**11.** *See Twyman*, 855 S.W.2d at 626 (Phillips, C.J., dissenting); this is consistent with his pre-

vious writing. *See Diamond Shamrock Refining and Marketing Co. v. Mendez*, 844 S.W.2d 198 (Tex.1992) (refusing to recognize intentional infliction but insisting that an employer's falsely and deliberately spreading word that an employee was a thief would not be sufficiently "outrageous" to qualify anyway).

**12.** I have previously explained why a finding of gross negligence was sufficient under existing Texas law to allow Susan Kerr to recover for the severe emotional distress she suffered. *See* 855 S.W.2d at 616 (Doggett, J., dissenting) ("As this court explained in *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 920 (Tex.1981), ' "reckless disregard" and "gross negligence" are synonymous terms.' ").

geous as a matter of law. 855 S.W.2d at 602.

So now the only way the majority can deny Kerr relief is to rewrite her pleadings and to disregard our procedural law that pleadings be broadly construed. Despite repeated references in Kerr's very short petition to grossly negligent conduct, the majority incredibly concludes that Boyles did not have "fair notice" that she sought to recover for that behavior. *Id.* at 601. Although she described Boyles' actions with great specificity, condemning them as "despicable" and "contemptible," she did not use the magic word "outrageous;" the majority concludes that he then did not have "fair notice" that his conduct was beyond human decency. *Id.* at 601.

No credence is given to the views of those who urge the necessity and importance of preserving a cause of action for negligent infliction of emotional distress. The writings of Chief Justice Phillips and Justice Gonzalez attempt to rebut rather than to understand and analyze the many amicus briefs filed by women's groups, *id.* at 601, 595, essentially suggesting that these women just took it wrong. Claiming the majority is a victim of widespread misunderstanding, Chief Justice Phillips dismisses the arguments advanced by these women nothing but "inventions" of overactive imaginations. *Id.* at 602. The Women's Advocacy Project, which provides social and legal services to victims of sexual and emotional abuse, captures the widespread harm inflicted by the majority:

> [T]he court has sent a message to all these Texans [who have suffered sexual and emotional abuse] that they are second class citizens. It defies logic to have a system of justice that will compensate the victim of a car wreck but that will refuse to compensate the recipients of

the most devastating of emotional injuries. Perhaps more significantly, this Court has sent a message to these citizens that their injuries do not merit judicial redress, leaving them with no alternative but to take justice into their own hands.[13]

Instead of redress, the women of Texas today receive only excuses.

While the majority unsuccessfully attempts to rationalize the injustice done to Susan Kerr by belatedly linking her case to *Twyman,* Justice Gonzalez adopts a more direct approach. The real problem here, he declares, is the "posturing" of the dissent of December 2, 1992. 855 S.W.2d at 604 (Gonzalez, J., concurring on rehearing).[14] He, of course, disregards the entire section IV of the majority's original opinion attempting to rebut the substantive legal arguments of that dissent and offers no explanation of why he chose not to respond in December. Instead, on behalf of the majority he makes only passing reference to the law in his rush to come to the assistance of insurance companies.

Today's writings seem designed to shift the focus anywhere but on the women that they affect. Chief Justice Phillips writes of future hypotheticals, *id.* at 603, Justice Gonzalez defends insurance companies while claiming to protect "home owners," *id.* at 604, and, incredibly, Justice Cornyn claims that what is really important here is the "freedom of individual action" of people like Dan Boyles and William Twyman. *Twyman,* 855 S.W.2d at 622. The legal posture of this case remains unchanged; what is truly involved here is the public reaction to the majority's prior writing, which has only generated more writing. Newspapers, not law books, appear to have

---

**13.** Amicus Brief at iii.

**14.** This approach to issues affecting women is similar to that Justice Gonzalez has previously expressed. *See Nelson v. Krusen,* 678 S.W.2d 918, 935 (Tex.1984) (Gonzalez, J., concurring and dissenting) (criticizing a woman's constitutionally-protected right to choose whether to have an abortion). Specifically, he insisted that:

> Since the United States Supreme Court's decision in *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), we have witnessed a tremendous increase in the number of abortions in this country, all in the name of "free choice" or the "right of privacy." ... This policy has contributed to a "disposable society."

*Id.* at 935.

been the principal inspiration for their new opinions.[15]

For her trouble, the majority imposes on Susan Kerr the obligation to pay court costs and reverses completely the judgment for damages awarded for the severe emotional distress she suffered when her most intimate act was videotaped and, with utter and complete disregard for her welfare, shared with others. Refusing to accept responsibility for overruling a century of Texas law in order to deny Susan Kerr recovery, then blaming the victim—this is not justice.

GAMMAGE and SPECTOR, JJ., join in this dissenting opinion.

DOGGETT, Justice, dissenting.

[Filed Dec. 2, 1992] ■

[F]reedom from severe emotional distress is an interest which the law should serve to protect.

*St. Elizabeth Hospital v. Garrard,* 730 S.W.2d 649, 653 (Tex.1987).

A young woman was found by a jury to have suffered severe emotional distress when her most intimate act was secretly videotaped and displayed to others. To deny her relief, the majority rewrites Texas law and recants the respect for human dignity affirmed by this court in *St. Elizabeth Hospital.* Having recently weakened the right to privacy[1] and demonstrated its indifference to the plight of a rape victim,[2] the majority now declares that in Texas no legal duty necessary to establish negligence arises from nonconsensual, surreptitious videotaping of a woman engaged in sexual intercourse. The rights of Texas women continue to slip away like sand through this majority's fingers.

In *St. Elizabeth Hospital,* we recognized that an emotional loss can be "just as severe and debilitating" as a physical one. 730 S.W.2d at 653. The sexual exploitation of Susan Kerr vividly demonstrates that reality. Dan Boyles, Jr., planned an encounter with Kerr at the home of a friend, Karl Broesche, who suggested videotaping the event. While Boyles was meeting Susan Kerr, two other friends, Ray Widner and John Paul Tamborello, helped Broesche focus a hidden video camera on the bed. After recording themselves making crude jokes and vulgar predictions about the anticipated activities of Boyles and Susan Kerr, the three departed, leaving the camera operating to record the ensuing intercourse without her knowledge or consent.

The recorded tape, shown by Boyles on three occasions to various people, became a topic of conversation, particularly at each of the universities attended by the two. At social gatherings, friends and even casual acquaintances approached Susan Kerr about the video, asking "why [she] did . . . it." Stigmatized with the reputation of "porno queen," Susan Kerr alleged severe emotional distress and humiliation from the videotaping, the showing of the tape, and the ensuing notoriety. Eventually, she sought counselling for what a psychologist later diagnosed as "post-traumatic stress disorder." A jury found that Susan Kerr had suffered severe emotional injury as a result of the negligence and gross negligence of the four men.

I.

With good reason this court has honored the principle that "freedom from severe

---

**15.** For a previous example of the effect of "newspaper pleadings" on the majority, *see Edgewood Indep. Sch. Dist. v. Kirby,* 804 S.W.2d 491, 502, 507 (Tex.1991) (Doggett, J., concurring on rehearing) (Appendix A).

**1.** *Diamond Shamrock Refining and Marketing Co. v. Mendez,* 844 S.W.2d 198, 213 (Tex.1992) (Doggett, J., dissenting) ("The assault on the right to privacy in Texas has begun.").

**2.** *See Delaney v. University of Houston,* 835 S.W.2d 56, 61 (Doggett, J., concurring) ("rape victim relying on three-page affidavit [required] to wait seventeen months after [oral] argument [here for] a misleading answer").

emotional distress is an interest which the law should serve to protect." *St. Elizabeth Hospital*, 730 S.W.2d at 654. Reviewing the outmoded rule that denied recovery unless a negligently produced emotional injury manifested itself physically, we concluded that such a restriction "arbitrarily denies court access to persons with valid claims." *Id.* at 652. We thus held that "proof of physical injury resulting from mental anguish" would no longer be required to establish liability. *Id.* at 654.

Today, however, the majority denies Susan Kerr the protection promised by the law of Texas, criticizing her for preserving one well-established cause of action while "fail[ing] to assert and preserve alternative causes of action." 855 S.W.2d at 603. Wholly disregarded is Kerr's argument that she brought the only action against the four men who wronged her that she could legally prove. Faulting her choice of alternatives is designed solely to create the illusion that injustice is not the principal product of today's opinion. With no other viable legal remedy available to her, Susan Kerr will, in fact, be left to resolve this "personal dispute[ ] through normal social means," 36 Tex.Sup.Ct.J. at 234, however that can be arranged.

To deny Susan Kerr the relief of which the jury found she was so deserving, the majority must overrule yet another precedent. In *St. Elizabeth Hospital*, parents sued for negligent infliction of emotional distress resulting from a hospital's negligent disposal of their stillborn daughter in

an unmarked grave. In upholding such an action, we repeatedly referred to the "tort of negligent infliction of mental anguish." 730 S.W.2d at 651–52. We also joined the "established trend in American jurisprudence" by rejecting as "arbitrary" and unreasonable the "physical manifestation requirement." *Id.* at 654.

In overruling our prior decision, the majority diverts Texas from that national trend recognizing the physical manifestation requirement as outmoded.[3] The majority's claim that we have somehow fallen "out of step" with American jurisprudence completely misses the mark. 855 S.W.2d at 595. The only question is whether Texas steps forward as in *St. Elizabeth Hospital* or races backward as the majority insists. Nationally, our prior decision is considered an authority that has provided an example for other states to follow. *See Gammon v. Osteopathic Hospital of Maine, Inc.*, 534 A.2d at 1285 & n. 7; *see also Corgan v. Muehling*, 158 Ill.Dec. at 495, 574 N.E.2d at 608. In the march to justice, Texas should not fear leadership.[4] But rather than leading, today's majority beats a quick retreat. If every such decision of this court is to be erased from the books as being "out of step," Texas is doomed to last place in legal thinking.

And why the rush to retreat? The majority declares with vigor that "judicial resources" would be "strained," 36 Tex.Sup. Ct.J. at 233, with the insignificant, the trivial, with other mere "intimate" affairs of

---

3. *See, e.g., Taylor v. Baptist Medical Center, Inc.*, 400 So.2d 369, 374 (Ala.1981); *Montinieri v. Southern New England Telephone Co.*, 175 Conn. 337, 398 A.2d 1180, 1184 (1986); *Leong v. Takasaki*, 55 Haw. 398, 520 P.2d 758, 762 (1974); *Corgan v. Muehling*, 143 Ill.2d 296, 158 Ill.Dec. 489, 495, 574 N.E.2d 602, 608 (1991); *Lejeune v. Rayne Branch Hosp.*, 556 So.2d 559, 565 (La. 1990); *Gammon v. Osteopathic Hosp. of Maine, Inc.*, 534 A.2d 1282, 1285 (Me.1987); *Bass v. Nooney Co.*, 646 S.W.2d 765, 772 (Mo.1983) (en banc); *Johnson v. Supersave Markets, Inc.*, 211 Mont. 465, 686 P.2d 209, 213 (1984); *James v. Lieb*, 221 Neb. 47, 375 N.W.2d 109, 116 (1985); *Ayers v. Township of Jackson*, 106 N.J. 557, 525 A.2d 287, 295 (1987); *Battalla v. State*, 10 N.Y.2d 237, 219 N.Y.S.2d 34, 176 N.E.2d 729, 730 (1961); *Johnson v. Ruark Obstetrics & Gynecology Assocs.*, 327 N.C. 283, 395 S.E.2d 85, 97 (1990); *Paugh v. Hanks*, 6 Ohio St.3d 72, 451

N.E.2d 759, 764 (1983); *Hammond v. Central Lane Communications Center*, 312 Or. 17, 816 P.2d 593, 598 (1991); *Hunsley v. Giard*, 87 Wash.2d 424, 553 P.2d 1096, 1102 (1976); *Gates v. Richardson*, 719 P.2d 193 (Wyo.1986); *see also Barnhill v. Davis*, 300 N.W.2d 104 (Iowa 1981).

4. *Reagan v. Vaughn*, 804 S.W.2d 463, 465 n. 4 (Tex.1990) (recognizing cause of action for loss of parental consortium); *see also Davenport v. Garcia*, 834 S.W.2d 4, 22 (Tex.1992) (national jurisprudence benefits from contributions of individual states); *Bexar County Sheriff's Civil Service Comm'n v. Davis*, 802 S.W.2d 659, 668–69 (Doggett, J., dissenting) (calling for judicial initiative by Texas in resolving new legal issues).

the heart. 855 S.W.2d at 600. How can anyone view what happened here as just another "instance of rude, insensitive or distasteful behavior"? *Id.* at 601–02. When a surreptitiously produced videotape of a woman participating in sexual intercourse makes her the focus of public discussion, how can her injury be dismissed as unworthy of protection? How can the majority's purported difficulty in " 'distinguish[ing] severe from nonsevere emotional harm,' " *id.* at 600, justify denying relief to Susan Kerr for the humiliation and lifelong disabling psychological disorder she suffered? How can Boyles' conduct be so callously condoned by the majority's announcement that they and other judges are just too busy to handle such matters? 36 Tex.Sup.Ct.J. at 233.

To give this sudden and unjustifiable reversal of our jurisprudence some degree of respectability the majority employs an analysis apparently drawn from Section 436A of the Restatement (Second) of Torts (1965), a provision that has not changed since we correctly rejected it in *St. Elizabeth Hospital.* Three decades ago the Restatement approved a physical manifestation limitation based upon the misunderstanding that:

[E]motional disturbance which is not so severe and serious as to have physical consequences is normally in the realm of the trivial, and so falls within the maxim that the law does not concern itself with trifles.... so temporary, so evanescent, and so relatively harmless and unimportant, that the task of compensating for it would unduly burden the courts and the defendants.... [E]motional disturbance may be too easily feigned, depending, as it must, very largely upon the subjective testimony of the plaintiff; ... recovery for it might open too wide a door for false claimants who have suffered no real harm at all.

Restatement (Second) of Torts § 436A, comment b.

While a claimant can also feign physical injuries, this court does not yet deny all

tort litigation on this basis. Instead, we have traditionally relied on the ability of twelve Texas citizens, empaneled as a jury, to distinguish between the fraudulent and the genuine. *St. Elizabeth Hospital,* 730 S.W.2d at 654. The majority's increasing disdain for mere ordinary Texans making such determinations as jurors is once again apparent today. *See* 36 Tex.Sup.Ct.J. at 232 n. 2; *see also Leleaux v. Hamshire–Fannett Indep. Sch. Dist.,* 835 S.W.2d 49, 54 (Tex.1992) (Doggett, J., dissenting); *Reagan v. Vaughn,* 804 S.W.2d 463, 491 (Tex.1991) (Doggett, J., concurring and dissenting). To deny a remedy to all because of the meritless actions of a few "arbitrarily den[ies] court access to persons with valid claims" and "do[es] not serve the best interests of the public." *St. Elizabeth Hospital,* 730 S.W.2d at 652, 654. Certainly the existence of physical symptoms does not affect the authenticity of the emotional injury. A contrary conclusion in effect rewards the weak and punishes the strong, when the injury sustained may be identical:

Mental suffering is no more difficult to estimate in financial terms, and no less a real injury, than "physical" pain.... [T]he law is not for the protection of the physically sound alone.

W. Page Keeton, *Prosser & Keeton on Torts* § 54, at 360 (5th ed. 1984) (hereinafter *Prosser & Keeton on Torts*) (citations omitted).[5] The degree of harm suffered does not change the nature of a wrongful act. If someone's objectionable conduct inflicts severe emotional distress on two victims, only one of whom manifests that distress physically, why should the wrongdoer's fault support recovery for one and not the other?

The unwarranted fear of unwarranted claims has been unequivocally rejected by one leading commentator who appropriately declared that:

[T]here has long been precedent enough [for emotional injury claims], and no

**5.** *Accord St. Elizabeth Hospital,* 730 S.W.2d at 652–54; *Corgan v. Muehling,* 158 Ill.Dec. at 495, 574 N.E.2d at 608; *Schultz v. Barbeton Glass Co.,* 4 Ohio St.3d 131, 447 N.E.2d 109, 111–13 (1983). *See also Julie A. Davies, Direct Actions for Emotional Harm: Is Compromise Possible?,* 67 Wash.L.Rev. 1, 24–25 (1992).

great increase in litigation has been observed.

*Prosser & Keeton on Torts* § 54, at 360. This comports with the experience of other state courts that have not been overburdened with litigation. *See James v. Lieb,* 221 Neb. 47, 375 N.W.2d 109, 117 (1985); *Schultz v. Barbeton Glass Co.,* 4 Ohio St.3d 131, 447 N.E.2d 109, 111-12 (Ohio 1983); *see also* Peter A. Bell, *The Bell Tolls: Toward Full Tort Recovery for Psychic Injury,* 36 U.Fla.L.Rev. 333, 362-65 (1984) (describing the threat of unlimited liability as a "conjured-up possibility which never materializes"). Nor is there the slightest indication that our decision in *St. Elizabeth* has strained Texas courts by requiring litigation of trivial claims.[6]

Texas need not and does not provide redress for every instance of rude or insensitive behavior that foreseeably results in hurt feelings or embarrassment. *St. Elizabeth Hospital,* 730 S.W.2d at 653 (extending protection to "severe" emotional injuries). We have sought to balance our desire not to expose parties to litigation over the trivial with our longstanding commitment to assuring redress for serious injuries. *See id.; Hill v. Kimball,* 76 Tex. 210, 13 S.W. 59, 59 (1890).

## II.

Even if it feels compelled to repudiate *St. Elizabeth Hospital,* to reject totally "an independent cause of action ... for negligently inflicted emotional distress," [7] 855

S.W.2d at 595, and to declare "there is no general duty in Texas not to negligently inflict emotional distress," *id.* at 594, the majority's refusal to recognize Susan Kerr's claim remains groundless. She should be permitted to recover here in an ordinary negligence action, which initially requires proof of four elements: the existence of a duty, a breach of that duty, a resulting injury, and the foreseeability to a reasonably prudent person that such an injury was a likely result of the breach. *See Rosas v. Buddies Food Store,* 518 S.W.2d 534 (Tex.1975). Modifying these standards as they apply to cases involving emotional harm would preserve the ability of those suffering severe emotional injury to recover damages.

Ordinarily, there are a number of ways to establish a duty, including the undertaking of any conduct that could foreseeably cause an injury. In the context of psychic injuries, foreseeability alone has been viewed by some as insufficient to create an adequate duty. *See Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.,* 48 Cal.3d 583, 257 Cal.Rptr. 98, 102, 770 P.2d 278, 281 (1989) (foreseeability must be accompanied by a legal duty).[8] Therefore, it is required that a duty be "owed the plaintiff that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two." *Id.* This duty requirement has also been expressed as "some special relationship between the plaintiff and the defendant establishing a higher

---

**6.** A recovery in a negligence action following *St. Elizabeth Hospital* has been allowed in three other published appellate cases. *See C.T.W. v. B.C.G. and D.T.G.,* 809 S.W.2d 788, 796 (Tex. App.—Beaumont 1991, no writ); *Orkin Exterminating Co. v. Williamson,* 785 S.W.2d 905, 912 (Tex.App.—Austin 1990, writ denied) (action brought both under DTPA and negligence); *City of Watauga v. Taylor,* 752 S.W.2d 199, 204 (Tex. App.—Fort Worth 1988, no writ). A fourth case followed *St. Elizabeth Hospital,* but was based on a separately actionable failure to deliver a telegram. *Texas Dep't of Corrections v. Winters,* 765 S.W.2d 531, 532 (Tex.App.—Beaumont 1989, writ denied). In two other reported cases, recovery in negligence was found not to be warranted under the facts of the case. *See Dominguez v. Kelly,* 786 S.W.2d 749, 753 (Tex.App.—El Paso 1990, writ denied) (a proper cause of ac-

tion was stated, but existence of a duty was never shown); *Buffalo Marine Serv., Inc. v. Monteau,* 761 S.W.2d 416, 425 (Tex.App.—Houston [14th Dist.] 1988, no writ) (recovery denied).

**7.** Although in *St. Elizabeth Hospital,* we discussed recovery for emotional distress damages as a separate tort, it is more properly viewed as an element of damages in a general negligence action. *See Johnson v. Ruark Obstetrics & Gynecology Assocs.,* 395 S.E.2d at 97.

**8.** *See* Davies, *Emotional Harm,* at 25. *But see* Peter A. Bell, *The Bell Tolls: Toward Full Tort Recovery for Psychic Injury,* 36 U.Fla.L.Rev. 333, 362-65 (1984); Virginia E. Nolan & Edmund Ersin, *Negligent Infliction of Emotional Distress: Coherence Emerging from Chaos,* 33 Hastings L.J. 583, 609-11 (1982).

than usual duty for defendant toward plaintiff." *Hubbard v. Allied Van Lines, Inc.*, 540 F.2d 1224, 1230 (4th Cir.1976). Consistent with Texas law, a sufficient duty may arise from a statute or other legal obligation, or may be created when a party "voluntarily enters into an affirmative action affecting the interests of another," and the harmful consequences of such conduct are reasonably foreseeable. *Otis Engineering Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex.1983).[9]

To deter litigation over generally inoffensive or otherwise legally acceptable conduct that may produce mental anguish unaccompanied by physical injury, reference could be made to the Restatement of Torts requirement of "extreme and outrageous conduct" of either an intentional or "reckless" nature. Restatement (Second) of Torts § 46(1). *See also id.* § 313(1)(a); *Hubbard*, 540 F.2d at 1230 (conduct must be "extreme and outrageous"); *Bass v. Nooney Co.*, 646 S.W.2d at 772; *Schultz v. Barbeton Glass Co.*, 447 N.E.2d at 113. The Restatement also requires that the injury be "severe." Restatement (Second) of Torts § 46; *see also Marlene F.*, 257 Cal. Rptr. at 102, 770 P.2d at 282 (discussing "[d]amages for severe emotional distress"). This conforms with our recognition in *St. Elizabeth Hospital* that there is a right to be free not from all psychic harm, such as that resulting from mere insults, but rather from "*severe* emotional distress." 730 S.W.2d at 653. This threshold showing of injury establishes a "check on the ... conver[sion of] minor emotional blows into lawsuits." Davies, *Emotional Harm*, at 49.

In the context of mental anguish, recovery may be had when an actor "should have realized that his conduct involved an unreasonable risk of causing the distress...." Restatement (Second) of Torts § 313(1)(a) ("Emotional Distress Unintended"). The requirement of foreseeability in this context has been expressed as conduct that is "likely to produce emotional distress in a person of ordinary sensibilities." *Hubbard*, 540 F.2d at 1230. Inclusion of the reasonably prudent person standard avoids the specter of "compensation for the hurt feelings of the supersensitive plaintiff—the eggshell psyche." *Gammon v. Osteopathic Hosp. of Maine, Inc.*, 534 A.2d at 1285.

Unfortunately, today's writing, unlike *St. Elizabeth*, fails to examine the relevant legal literature on emotional distress, including that which recommends permitting such an action with reasonable limitations as a part of negligence.[10] If, as the majority insists, further restrictions are necessary for negligently produced mental anguish damages absent physical manifestation, these could be imposed without destroying all protection against emotional injury by the following conditions: (1) there must be some legal duty not to cause harm to another beyond that created by foreseeability of injury, such as that arising from a special relationship, a statutory duty, or from the voluntary undertaking of an affirmative action that puts another at risk; (2) that duty must be breached by conduct that is reckless, extreme or outrageous; (3) the resulting psychic harm must be severe; and (4) the likelihood of such an injury must be foreseeable to a reasonably prudent person. These standards would address in a more balanced way the majority's single-minded interest in discouraging unmeritorious suits while maintaining the promised protection of the law to those sustaining severe emotional injuries.

---

9. Maintaining a duty requirement ensures that "recovery of damages can be achieved without triggering potentially limitless liability, and hence is not unfair to defendants," Davies, *Emotional Harm*, at 51, while ensuring the standard's flexibility avoids a static and unresponsive rule of law. *Id.*

10. *See, e.g.,* Julie A. Davies, *Direct Actions for Emotional Harm: Is Compromise Possible?*, 67 Wash.L.Rev. 1, 49–53 (1992) (hereinafter Davies, *Emotional Harm*); Charles E. Cantu, *Negligent Infliction of Emotional Distress: Expanding the Rule Evolved Since Dillon*, 17 Tex.Tech L.Rev. 1557, 1574–76 (1986) (hereinafter Cantu, *Negligent Infliction*); Peter A. Bell, *The Bell Tolls: Toward Full Tort Recovery for Psychic Injury*, 36 U.Fla.L.Rev. 333, 334–35 (1984); Virginia E. Nolan & Edmund Ersin, *Negligent Infliction of Emotional Distress: Coherence Emerging from Chaos*, 33 Hastings L.J. 583, 609–21 (1982).

The facts before us satisfy all of these conditions. Although Boyles clearly intended the act of engaging in intimate relations with Susan Kerr which would be videotaped, he did not intend the consequences, in this case the psychic injury suffered. Boyles stressed that he told Kerr that "he was sorry and had not meant to hurt her." Counsel for Boyles conceded at oral argument that "certainly an argument can be made in this case that there was negligence also involved," and that "there is evidence from which" negligence could be argued. By showing and then failing to destroy the tape, he negligently disregarded Kerr's emotional well-being. By Boyle's own admissions, his conduct was negligent; he did not intend to harm Kerr. Further, based on a charge defining "negligence" as "failing to do that which a person of ordinary prudence would have done under the same or similar circumstances," the jury's finding adequately constitutes a determination of foreseeability.

Under the circumstances presented, Boyles' participation in the surreptitious videotaping and showing of the recording gave rise to a heightened duty of care. The majority opinion offers not the slightest explanation of why this does not create a duty not to inflict emotional distress that was breached by Boyles' role in making, displaying, and failing to destroy the videotape, all of which conduct the jury found to constitute gross negligence, defined as:

> such an entire want of care as to indicate that the act or omission in question was the result of conscious indifference to the rights, welfare or safety of the persons affected by it.

This finding of conscious indifference based on Boyles' highly offensive behavior is sufficient to satisfy the prerequisite of outrageous or reckless conduct.[11] *See Underwriters Life Ins. Co. v. Cobb,* 746 S.W.2d 810, 819 (Tex.App.—Corpus Christi 1988, no writ) (to recover mental anguish damages in an insurance code action "[i]t is necessary to show the tortfeasor acted knowingly *or with conscious indifference* "). As this court explained in *Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 920 (Tex.1981), " 'reckless disregard' and 'gross negligence' *are synonymous terms.*"

Similarly, there was an adequate finding of a severe emotional or psychic harm. The jury question on emotional distress defined "mental anguish" as:

> [A] relatively high degree of mental pain and distress. It is more than mere disappointment, anger, resentment, or embarrassment, although it may include all of these. It includes a mental sensation of pain resulting from such painful emotion as grief, severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation.[12]

By finding damages under this definition, the jury indicated that Kerr's injury was not trivial or *de minimis,* but rather a "relatively high degree of mental pain and distress." The severity of her injuries was supported by considerable evidence including expert testimony that this disorder would plague Kerr for the rest of her life. Hence, even if significant limitations were imposed on recovery for emotional distress in a negligence action, this jury's findings are sufficient to support an award of damages to Susan Kerr.

In its haste to bar access to the courts, the majority prefers abolition of an action to consideration of a more moderate course crafted from Texas precedent and a growing body of law nationally that would limit liability for the trivial while recompensing the truly grievous. If restrictive standards are necessary, this court should first attempt modification and improvement, not evisceration of a cause of action. *Cf. Cy-*

---

11. This heightened culpability addresses the only other justification for the physical manifestation rule advanced in Restatement (Second) of Torts § 436A comment b.

12. This definition of mental anguish has been applied rather consistently, and comports with our definition in *Burk Royalty Co.,* 616 S.W.2d at 920. *See, e.g., How Ins. v. Patriot Fin. Servs.,* 786 S.W.2d 533, 542 (Tex.App.—Austin 1990, writ denied); *Cobb,* 746 S.W.2d at 819; *Roberts v. U.S. Home Corp.,* 694 S.W.2d 129, 136 (Tex. App.—San Antonio 1985, no writ); *Trevino v. Southwestern Bell Tel. Co.,* 582 S.W.2d 582, 584 (Tex.Civ.App.—Corpus Christi 1979, no writ).

*press Creek Utility Co. v. Muller,* 640 S.W.2d 860, 866 (Tex.1982).

### III.

But moderation and balance are not qualities which this majority values. *See, e.g., Walker v. Packer,* 827 S.W.2d 833, 846 (Tex.1992) (Doggett, J., dissenting) (discussing majority's alteration of mandamus procedures to protect those obstructing discovery while denying review to those seeking information). The only semblance of moderation associated with today's writing is the strategic decision to overrule *St. Elizabeth Hospital* while apparently leaving all related law in place. This creates more anomalies than it purports to resolve.

Perhaps most curious is the majority's insistence that it "continue[s] to reject the physical manifestation requirement." 36 Tex.Sup.Ct.J. at 233, when, in fact, any such rejection is most narrowly limited. The majority continues to recognize recovery for negligent infliction of emotional distress without evidence of a physical injury for a few previously accepted categories such as the mistreatment of corpses or misdelivery of telegrams. *See Pat H. Foley & Co. v. Wyatt,* 442 S.W.2d 904 (Tex. Civ.App.—Houston [14th Dist.] 1969, writ ref'd n.r.e.) (negligent handling of corpse); *Stuart v. Western Union Tel. Co.,* 66 Tex. 580, 18 S.W. 351 (1885) (negligent failure of telegraph company to deliver death message). *See also Prosser and Keeton on Torts* § 54, at 362; Cantu, *Negligent Infliction,* at 1565. Only because "a claimant's right to recover" under the limited circumstances of these prior cases is left "unaffected" by today's opinion, 855 S.W.2d at 597–98, can the majority claim it has not fully reinstituted the physical manifestation requirement.

Greater protection is thus extended to negligent mishandling of the dead than outrageous treatment of the living. Distinc-

tions such as those between abuse to the living, whose parents may not recover for their distress, and abuse of the dead, whose parents may, are "surely no great triumph of logic." *Prosser & Keeton on Torts* § 54, at 366. One commentator explains that the allowance of damages for mistreatment of corpses derives from little more than the "mysticism or aura of death." Cantu, *Negligent Infliction,* at 1565. The law cannot stand on such arbitrary foundations. By recognizing the appropriateness of damages for emotional distress as a part of traditional negligence action when all necessary elements are established, arbitrary limitations can be permanently discarded so that any person directly victimized is treated no differently than the parents of dead children and the recipients of inaccurate telegrams.

What this court today classifies as a suit for personal injuries resulting from emotional harm is nothing more than a requirement that some physical injury be shown to recover in a negligence action seeking damages for emotional distress. In *Moore v. Lillebo,* 722 S.W.2d 683, 686 (Tex.1986), we concluded:

> The physical manifestation rule has been expanded to include many symptoms. "Courts have gone to great lengths in order to find a physical injury." Comment, *Texas Bystander Recovery: In the Aftermath of Sanchez v. Schindler,* 35 Baylor L.Rev. 896, 901 (1983). All manner of symptoms have qualified as physical manifestations.... Such a wide-ranging meaning has attached to "physical manifestation," that the term has lost much of its former significance....

(Footnote added).[13] The effect of today's ruling is to preserve the holding that physical manifestation is meaningless in a wrongful death action while declaring it

---

13. This court has not hesitated to permit recovery when emotional harm produces any physical symptoms. *See, e.g., Gulf, C. & S.F. Ry. Co. v. Hayter,* 93 Tex. 239, 54 S.W. 944, 944 (Tex. 1900) (permitting recovery for fatigability, lack of energy, various aches and pains, and disinclination to activity); *Houston Electric Co. v. Dor-*

sett, 145 Tex. 95, 194 S.W.2d 546, 546 (1946) (physical manifestation shown by "extreme nervousness, severe headaches, lapse of memory and brain deterioration"). *See also Moore,* 722 S.W.2d at 686 ("embarrassment" and "humiliation" suffice in other jurisdictions).

meaningful where only mere lifelong emotional harm is produced.

## IV.

To the majority what happened to this woman is indistinguishable from a mere trifle or any other distress associated with daily existence. The public display of this woman's most intimate act is compared to the termination of any "intimate relationship," 855 S.W.2d at 600, and callously treated as just another affair of the heart. When these four men videotaped Susan Kerr during sexual intercourse, they grossly trespassed over the line of the ordinary and acceptable. And why should they not be legally accountable to her for the emotional scars inflicted by their misconduct? No answer of any kind is provided. Instead the majority disparages the victim with gratuitous comments that "[a]lthough not dating [Boyles] steadily," Susan Kerr "shared several ... sexual encounters" soon after meeting him, *id.* at 594, and noting that, despite the emotional blow sustained, she "had subsequent sexually-active relationships." *Id.* at 594.

While suggesting California law is "instructive," *id.* at 599, the majority proceeds to disregard the fact that the definition of duty in that state is not limited to doctors, morticians and telegraph companies. But whether today's writers looked to California or some other secret source to reject Susan Kerr's claim, we can only surmise. No analysis or explanation of any kind is offered regarding what factors were determinative of the majority's unilateral choice to reject Susan Kerr's claim that these four men owed a duty not to inflict severe harm on her. The law is not irretrievably locked in the days before televisions and videocameras, nor limited to operators of telegraphs and horse-drawn carriages. In refusing to discuss why no duty arises from Boyles' sexual exploitation of Susan Kerr, the majority abdicates its responsibility. Until writings such as today's, our court sought to fulfill its obligation to keep tort law apace with modern times: "The cre-

ation of new concepts of duty in tort is historically the province of the judiciary." *El Chico Corp. v. Poole,* 732 S.W.2d 306, 314 (Tex.1987).[14]

The majority fails to acknowledge that the human psyche can be injured in a way that is every bit as real as slicing through flesh or crushing bones. Once again today's opinion considers only one-half of the fairness equation:

> And where the concern is to avoid excessive punishment upon a negligent defendant, it must be asked whether fairness will permit leaving the burden of loss instead upon the innocent victim.

*Prosser & Keeton on Torts* § 54, at 361. I believe we should adopt a balanced approach that strives for fairness to both. Instead, by the majority's return to the physical manifestation rule, another "dead tort principle [has been] resuscitate[d]." *See Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 18 (Tex.1992) (Doggett, J., dissenting). There I compared this reinvigoration of such dead and unrealistic concepts to the awakening of "unthinking zombie[s] in *The Night of the Living Dead,*" *id.* at 12, and predicted that:

> Like the movies, this opinion will have sequels. Unlike the movies, the havoc the court effects on our traditional tort law will cause direct harm to the lives of thousands of ordinary Texans.

*Id.* at 18. "Sequel" was perhaps an understatement; what is happening here is a Wednesday matinee serial where each such revisionist writing could appropriately end "To Be Continued."

"Rude and callous behavior," we are told, is only the price we must pay—what "must be tolerated in a free and open society." 36 Tex.Sup.Ct.J. at 236. The conduct which occurred here has nothing to do with promoting a free and open society.

The message of the majority is clear: Don't bother this court to separate injustice from the inconsequential, better to bar both. The cause is now remanded for Su-

---

**14.** This refusal to impose a duty to prevent outrageous and harmful conduct is not, however, a new phenomenon. *See Greater Houston Transportation Co. v. Phillips,* 801 S.W.2d 523, 527–28 (Tex.1990) (Doggett, J., dissenting).

san Kerr to endure the trauma of another trial "in the interest of justice." 855 S.W.2d at 594. What a conflict in terms; no interest of justice has been served here today. I dissent.

MAUZY and GAMMAGE, JJ., join in this dissenting opinion.

COOK, Justice, concurring and dissenting.

[Filed Dec. 2, 1992.] ■

I concur with the holding of the majority. I write separately, however, because I find the court's opinion confusing and inconsistent in many respects. I must clarify my own positions on these important issues.

The court's opinion leads to confusion between a cause of action and damages. In some sections, the court refers to a "cause of action for negligent infliction of emotional distress." Elsewhere, the court refers to "emotional distress" as an element of damages. Another section refers to "mental anguish damages."

The confusion in terminology is understandable, given the various labels our judiciary has applied to causes of action for emotional distress and the element of damages. Lack of precision in terms, however, should not be allowed to obscure the difference between the cause of action and the element of damages or the exact effect of today's decision. The cause of action we reject today is the general negligent infliction of emotional distress, once called negligent infliction of mental anguish in *St. Elizabeth Hospital v. Garrard*, 730 S.W.2d 649 (Tex.1987). What we do not disturb in the court's opinion is the status of damages. Damages for mental anguish are still recoverable in Texas, as the result of many torts. Furthermore, such damages need not be proved by physical manifestation. In my view, *St. Elizabeth* was correct to drop the physical manifestation requirement to recover damages for mental anguish.

I decline to join in any part of the court's opinion which discusses a cause of action for intentional infliction of emotional distress. The court has reached beyond the questions presented in this case to discuss intentional infliction within its discussion of a possible cause of action for gross negligence. The discussion is, unnecessary and confuses the issue.