**Opinion issued July 25, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00165-CV

———————————

## VORTEK AVIATION LLC AND WAYNE SCHMITZ, Appellants

## V.

## ZACH KRACHINSKI AND ARK 84 LLC, Appellees

---

**On Appeal from the 165th District Court**
**Harris County, Texas**
**Trial Court Case No. 2017-58042**

---

## MEMORANDUM OPINION

Appellees Zach Krachinski and Ark 84 LLC sued appellants Vortek
Aviation LLC and Wayne Schmitz for breach of contract, fraud, and several other
causes of action, alleging that Vortek and Schmitz had failed to provide repairs to
Krachinski and Ark 84's aircraft as agreed between the parties. Neither Vortek nor

Schmitz filed a timely answer, and the trial court rendered a default judgment in favor of Krachinski and Ark 84. Vortek and Schmitz filed a motion for new trial asserting that the judgment did not comport with Krachinski and Ark 84's pleadings. The trial court denied the motion for new trial by operation of law. Now, on appeal, Vortek and Schmitz argue: (1) the judgment rendered by the trial court did not conform to the pleadings; (2) the trial court failed to hold a hearing on unliquidated damages; and (3) Krachinski and Ark 84 failed to provide evidence of unliquidated damages.

We affirm.

## Background

Krachinski created Ark 84 LLC as a holding company for his 1984 Piper PA-46-310P Malibu aircraft (the Aircraft). Krachinski and Ark 84 (collectively, Krachinski) engaged Vortek to make some repairs to the Aircraft and paid $71,100 in advance. Vortek is an FAA-Certified Repair Station that operates at David Wayne Hooks Airport in Harris County, Texas, and Schmitz is Vortek's president. Krachinski was unhappy with the work ultimately performed by Vortek because the repairs were incomplete and took many months longer than the time agreed to by the parties. Krachinski sought redress by engaging an attorney to seek completion of the repairs and/or return of the Aircraft. Krachinski was ultimately able to reclaim the Aircraft.

Accordingly, on September 5, 2017, Krachinski filed suit against Vortek and Schmitz. His petition identified Vortek, Schmitz, and a Vortek employee named Ricardo Santiesteban as defendants.[1] Krachinski alleged that, in December 2015, "pursuant to a written proposal from Vortek (the 'Agreement'), the parties agreed that Vortek would install upgraded avionics in the Aircraft" for an "agreed price [of] $71,100 for parts and labor." The petition further alleged that "Defendants required payment of $60,900 immediately, allegedly to take advantage of a promotion being offered by the manufacturer," and that Krachinski was "told by Defendants, in writing, that the project would take '6 weeks or less.'" Krachinski paid the entire $71,100 in advance and left the Aircraft with Vortek. However, according to the petition, "Defendants did not purchase the equipment [from the manufacturer] as they said they would." Krachinski alleged that Vortek and Schmitz used his money for other projects, causing him to miss the discounted price associated with the manufacturer's promotion, and gave "a steady stream of excuses" as to why the project was not proceeding despite the passage of several months.

Krachinski alleged that Vortek eventually gave him "a written 'promissory,' signed by [Santiesteban] on Vortek letterhead, which was apparently intended to serve as a written assurance that the Aircraft would be ready 'by the end of August

---

[1] Santiesteban never answered and is not a party to this appeal.

3

2016.'" Despite this representation by Vortek, the work was not completed by August 2016, and "the parties agreed to have another facility at the airport perform an annual inspection, independent of the avionics work allegedly being performed on the Aircraft" by Vortek.

Krachinski further alleged:

When the inspection was completed and it was time to return the Aircraft to Defendants' [Vortek and Schmitz's] facility, for reasons known only to Defendants, they told the inspection facility they did not want the Aircraft back in their hangar because Plaintiffs [Krachinski and Ark 84] were not paying their bills. This blatant lie caused Plaintiffs to have problems with several business at the airport.

Krachinski alleged that, because of the problems that arose due to Vortek's "misrepresentations" about him and the extreme delays in completing the agreed-upon repairs, he retained an attorney. Ultimately, it took Krachinski "20 months from when the parties made the Agreement until the Aircraft was delivered" to him, and there were still problems with the work that had been performed. Krachinski alleged that, among other concerns, he had paid for work that was not done, he had paid for equipment that was not installed, and some equipment had been installed incorrectly and had to be corrected.

Based on these facts, Krachinski alleged causes of action for breach of contract, breach of implied warranty of good and workmanlike performance of services, fraud, negligent misrepresentation, conversion, defamation, business

4

disparagement, and conspiracy. Regarding his cause of action for breach of contract, Krachinski alleged:

> Plaintiffs had a valid, enforceable written Agreement, supplemented by both written and oral amendments, which Defendants breached. Plaintiffs are the proper parties to sue for the breach of the contract, and have in every respect performed as agreed. Defendant Vortek breached the contract, which caused injury to Plaintiffs.

Krachinski sought actual damages, including:

> actual damages for difference in value between the avionics contracted for and avionics installed, lost rebates worth thousands of dollars, hangar expenses incurred by Plaintiffs in Indiana in anticipation of the return of the Aircraft and necessary to avoid forfeiting hangar space, insurance on the Aircraft while in Defendants' possession, travel expenses for a useless trip to Texas, expenses to perform work that Defendants were paid to do but did not do, expense[s] to correct problems with the avionics installed by Defendants, an annual inspection required because six weeks turned out to be 20 months, value of avionics removed from the Aircraft that are still the property of Plaintiffs, expenses incurred to have pilots repeatedly available to test fly the Aircraft and to diagnose and repair installation problems caused by Defendants, and reasonable attorney's fees required to convince Defendants that they had to get the project completed when they refused to respond to Plaintiffs' demands (which still took five more months).

Krachinski also sought exemplary damages under Civil Practice and Remedies Code chapter 41.003, mental anguish damages, and "reasonable and necessary costs and attorney's fees pursuant to Texas Civil Practice and Remedies Code § 37.009 and § 38.001."

In his petition, Krachinski also applied for a temporary restraining order and temporary injunction. Krachinski alleged, "Plaintiffs have just become aware that

5

Defendants have shut down Vortek and chained the doors to the business. Upon information and belief, Defendants are in the process of selling Vortek, or the assets of Vortek, to a foreign entity." Krachinski sought a temporary restraining order and temporary injunction to protect Vortek's assets until a hearing could be held and he could obtain a judgment.

On September 7, 2017, Vortek was served with the original petition through its registered agent, Thomas Kerr. The return of service was filed with the trial court on September 9, 2017.

On September 22, 2017, the trial court held a hearing on the application for temporary injunction. The trial court granted the injunction, ordering that Vortek and its members, officers, and agents were enjoined from "using, spending, disposing of or using as collateral, proceeds from the sale of Vortek assets in the amount of $99,000.00," i.e., the approximate amount of Krachinski's damages.

Schmitz was served with the original petition on September 23, 2017, and the return of service was filed with the trial court on September 25, 2017. Notice of the temporary injunction order was likewise served on Vortek and Schmitz, through attorney and registered agent Thomas Kerr, on September 27, 2017, and the return of service was filed with the trial court that same day.

On October 20, 2017, Krachinski moved for default judgment against Vortek. In this motion, he sought default judgment "establishing Vortek's liability

and, after a hearing, render[ing] an interlocutory judgment awarding Plaintiffs damages in the amount of $99,404.00 plus costs, attorney's fees, and prejudgment interest." He sought $20,895.93 as "reasonable and necessary attorney's fees and expenses." As evidence of damages, Krachinski attached exhibits containing his sworn testimony from the temporary injunction hearing detailing his relationship with Vortek and the damages suffered, his affidavit relating to out-of-pocket damages, and affidavits establishing the attorney's fees expended in "efforts to get the work completed and get his plane back" and reasonable and necessary attorney's fees billed in relation to the lawsuit.

On November 9, 2017, Krachinski moved for default judgment against Schmitz, again seeking judgment as to Schmitz's liability and the same damages as those listed in the motion for default judgment against Vortek. He again attached transcripts of his testimony and affidavits regarding damages and attorney's fees. The amount of attorney's fees identified in this motion was $26,285.58.

Krachinski's testimony from the temporary injunction hearing detailed the nature of his dealings with Vortek, Schmitz, and Santiesteban. Krachinski testified that he had had specific dealings with Schmitz as the "main owner" of Vortek. And Kranchinski testified regarding the specific damages he incurred as a result of Vortek and Schmitz's failure to perform the work as agreed. Krachinski's damages affidavit averred that he had personal knowledge "of the expenses incurred by me

7

and my company [Ark 84] in relation to the fraudulent and unethical actions, statements and business practices of the defendants in this lawsuit." He itemized his damages, identifying items such as $3,500 for the "[d]ifference in value between equipment installed and equipment paid for"; $4,250 for "[m]anufacturer's promotion incentives not received but bargained for"; $7,545 in hangar expenses; and $16,764 for "[a]viation attorney assistance forcing Defendants to finish job." According to the affidavit, Krachinski's total "out of pocket" damages amounted to $99,404.

On December 7, 2017, the trial court rendered its final default judgment in favor of Krachinski and Ark 84. The trial court awarded $99,404.00 as the "principal amount due" jointly and severally against Vortek, Schmitz, and Santiesteban. The trial court also awarded Krachinski and Ark 84 $19,900.93 as attorney's fees, $995 as costs, and interest.

On December 8, 2017, the day after the trial court rendered default judgment, Vortek and Schmitz filed their original answer, a general denial.

On January 5, 2018, Vortek and Schmitz filed their motion for new trial. In this motion, Vortek and Schmitz argued, "Nowhere in Plaintiff's Original Petition does Plaintiff [cite] any oral or written agreement directly between Plaintiff and Defendant Schmitz." Vortek and Schmitz also complained that the judgment found all defendants jointly and severally liable but failed to specify "what cause of

8

action, if any, the judgment was based on." They argued that "there is no pleading sufficient to support a judgment against Defendant Schmitz under either the contract or fraud theories" because the pleadings did not identify a contract directly between him and Krachinski, there were no allegations of fraud committed by Schmitz, and the fraud claim could not support an award of attorney's fees.

The motion for new trial further stated:

> Defendant Schmitz's failure to timely file an answer occurred as a result of accident or mistake and not due to conscious disregard. Defendant Vortek is no longer an operating entity and has minimal assets. On advice of counsel, Vortek intended to pursue bankruptcy and communicated with a bankruptcy attorney. Due to a miscommunication, and Mr. Schmitz's departure from the United States on business, the bankruptcy was not completed and filed prior to execution of the judgment.

Schmitz and Vortek argued that the court should grant a new trial "because the judgment entered is not properly supported by the pleadings of Plaintiff" and the live pleadings did not establish Schmitz's liability because there were no allegations that Schmitz himself was a party to the contract or was in privity of contract with a party. The motion for new trial further argued that Krachinski was not entitled to all of his hangar fees: "Regardless of location, the aircraft would need to be hangered. Plaintiff would be entitled to recover excess hangar fees, but should not recover for both the expenses incurred in Texas and Indiana as the aircraft had to be stored regardless of flight status." Schmitz and Vortek made similar allegations regarding insurance costs and the purported "double recovery"

9

for both "a rebate" and separate "Manufacturer's Promotion incentives." They also argued that Krachinski's damages affidavit "identifies damages for extra travel time on business trips . . . and for the refinish of the instrument panel . . . which are not support by [the] Original Petition."

Vortek and Schmitz's motion for new trial was unverified, and the record does not contain any evidence accompanying it.

Krachinski responded. The response included evidence that Vortek never filed for bankruptcy and that Krachinski's lawyer contacted Kerr, the lawyer representing Vortek and Schmitz, prior to filing the motion for default judgment and asked whether Vortek intended to file an answer, but received no response. Thus, Krachinski argued that Vortek and Schmitz could not establish the necessary elements to have the default judgment set aside.[2]

The motion for new trial was denied by operation of law.

---

[2] In *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124 (Tex. [Comm'n Op.] 1939), the Texas Supreme Court set forth three requirements that a defaulting party must satisfy to set aside a default judgment and obtain a new trial: (1) the defaulting party's failure to file an answer before judgment was not intentional or the result of conscious indifference, but was a mistake or accident; (2) the defaulting party has a meritorious defense; and (3) a new trial will not result in delay or prejudice to the non-defaulting party. 133 S.W.2d at 126; *see also Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 925–26 (Tex. 2009) (discussing *Craddock* factors in context of challenge to trial court's ruling on motion for new trial seeking to set aside default judgment).

**Default Judgment Conforms to the Pleadings**

In their first issue, Vortek and Schmitz argue that the trial court erred in rendering a default judgment in favor of Krachinski because the judgment did not conform to the pleadings. Specifically, Vortek and Schmitz argue that Krachinski "failed to plead and provide evidence of a contract between [Krachinski] and . . . Schmitz."

We first observe that Vortek's and Schmitz's failure to file answers in this case operated as an admission of all of the material facts alleged in Krachinski's petition, except for unliquidated damages. *See, e.g.*, *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 930 (Tex. 2009); *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992). There was no need for Krachinski to have provided proof of his claims. *See Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 183 (Tex. 2012) (non-answering party in no-answer default judgment has "admitted both the truth of facts set out in the petition and the defendant's liability on any cause of action properly alleged by those facts," thus, "defendant's default . . . establishes liability"); *UNL Inc. v. Oak Hills Photo Finishing, Inc.*, 733 S.W.2d 402, 406 (Tex. App.—San Antonio 1987, no pet.) ("It is not necessary that the petition plead the evidence upon which the plaintiff relies to establish his asserted cause of action[.]"). The material question on this issue is whether Krachinski's pleading properly alleged causes of action against Vortek and

Schmitz and whether the judgment rendered by the trial court conformed to that pleading.

## A. Standard of Review

A default judgment, like all judgments, must conform to the pleadings. *See Stoner v. Thompson*, 578 S.W.2d 679, 682 (Tex. 1979); *Lynch v. Lynch*, 540 S.W.3d 107, 134 (Tex. App.—Houston [1st Dist.] 2017, pet. denied); *see also* TEX. R. CIV. P. 301 ("The judgment of the court shall conform to the pleadings[.]"). Where a default judgment is challenged based on the pleadings which support it, the default judgment is erroneous only if (1) the petition does not attempt to state a cause of action that is within the jurisdiction of the court; (2) the petition does not give fair notice to the defendant of the claim asserted; or (3) the petition affirmatively discloses the invalidity of such claim. *Paramount Pipe & Supply Co. v. Muhr*, 749 S.W.2d 491, 494 (Tex. 1988); *Dodd v. Savino*, 426 S.W.3d 275, 291 (Tex. App.–Houston [14th Dist.] 2014, no pet.); *Elite Door & Trim, Inc. v. Tapia*, 355 S.W.3d 757, 766 (Tex. App.—Dallas 2011, no pet.).

In determining whether a pleading provides fair notice, we must assess whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant to enable the opposing party to prepare a defense. *See Low v. Henry*, 221 S.W.3d 609, 612 (Tex. 2007); *Lynch*, 540 S.W.3d at 134–45; *Tapia*, 355 S.W.3d at 766. Where, as here,

12

no special exceptions are filed, we liberally construe the pleadings in favor of the pleader. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000); *see also Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993) (recognizing that court should liberally construe petition to determine what causes of action may be reasonably inferred from the pleading). That an element of a claim has been omitted is not dispositive. *See Boyles*, 855 S.W.2d at 601. The fair notice standard "relieves the pleader of the burden of pleading evidentiary matters with meticulous particularity." *Tapia*, 355 S.W.3d at 766. Rather, a plaintiff's petition must contain "a short statement of the cause of action sufficient to give fair notice of the claim involved." TEX. R. CIV. P. 47(a); *see also* Tex. R. Civ. P. 45(b) (pleadings shall "consist of a statement in plain and concise language of the plaintiff's cause of action" and further providing, "That an allegation be evidentiary or be of legal conclusion shall not be grounds for an objection when fair notice to the opponent is given by the allegations as a whole").

In determining whether a pleading is adequate, we examine whether an opposing attorney of reasonable competence, on review of the pleading, can ascertain the nature and the basic issues of the controversy. *Tapia*, 355 S.W.3d at 766. "[A] petition is sufficient if a cause of action may reasonably be inferred from what is specifically stated in the petition, 'even if an element of the cause of action

is not specifically alleged.'" *Dodd*, 426 S.W.3d at 292 (quoting *Boyles*, 855 S.W.2d at 601).

**B.    Analysis**

Here, Schmitz does not argue that Krachinski's causes of action were outside the trial court's jurisdiction or that they were affirmatively invalidated by the petition. *See Muhr*, 749 S.W.2d at 494 (stating grounds for challenging default judgment based on pleadings which support it). Rather, Schmitz argues that Krachinski failed to plead that Schmitz was a party to a contract with Krachinski or was in privity of contract with Krachinski. Thus, we consider whether Krachinski's pleadings gave Schmitz fair notice of the breach of contract claim.

Krachinski's pleadings identified both Vortek and Schmitz, as Vortek's president, as "Defendants." Krachinski alleged in the petition that, in December 2015, "pursuant to a written proposal from Vortek (the 'Agreement'), the parties agreed that Vortek would install upgraded avionics in the Aircraft" for an "agreed price [of] $71,100 for parts and labor." The petition further alleged that "Defendants required payment of $60,900 immediately, allegedly to take advantage of a promotion being offered by the manufacturer" and that Krachinski was "told by Defendants, in writing, that the project would take '6 weeks or less.'" Krachinski paid the entire $71,100 in advance and left the Aircraft with Vortek.

14

Krachinski specifically alleged as a cause of action for breach of contract against all Defendants:

> Plaintiffs had a valid, enforceable written Agreement, supplemented by both written and oral amendments, which Defendants breached. Plaintiffs are the proper parties to sue for the breach of the contract, and have in every respect performed as agreed. Defendant Vortek breached the contract, which caused injury to Plaintiffs.

Regarding damages, Krachinski likewise pled for:

> actual damages for the difference in value between the avionics contracted for and avionics installed, lost rebates worth thousands of dollars, hangar expenses incurred by Plaintiffs in Indiana in anticipation of the return of the Aircraft and necessary to avoid forfeiting hangar space, insurance on the Aircraft while in Defendants' possession, travel expenses for a useless trip to Texas, expenses to perform work that Defendants were paid to do but did not do, expense[s] to correct problems with the avionics installed by Defendants, an annual inspection required because six weeks turned out to be 20 months, value of avionics removed from the Aircraft that are still the property of Plaintiffs, expenses incurred to have pilots repeatedly available to test fly the Aircraft and to diagnose and repair installation problems caused by Defendants, and reasonable attorney's fees required to convince Defendants that they had to get the project completed when they refused to respond to Plaintiffs' demands (which still took five more months).

Thus, Krachinski pled the formation of a valid agreement to which Schmitz was a "party," as the president of Vortek; that Krachinski performed under the agreement; that the "Defendants"—including Schmitz—breached this agreement, and that the "Defendants'" breach caused him damages. *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018) (breach of contract action requires proof of four elements: (1) formation of valid contract; (2) performance by

15

plaintiff; (3) breach by defendant; and (4) damages that plaintiff sustained as result of breach). Considering the pleading as a whole and liberally construing it, as we must, it is clear that while Schmitz was not listed with particularity in the pleadings regarding the breach of contract claim, he was nevertheless identified as a party and a named defendant on that claim. *See Garcia v. Tester*, No. 13-15-00498-CV, 2016 WL 4578405, at \*5 (Tex. App.—Corpus Christi–Edinburg Sept. 1, 2016, no pet.) (mem. op.) (holding, "[i]n light of the entire pleading," that when petition "clearly identified" individual as defendant, alleged individual was "a co-owner" of corporate defendant, and petition "then set forth allegations of negligence pertaining to [the d/b/a identity of the corporate defendant]," pleadings were sufficient to fairly notify individual defendant of claims being made against him); *UNL Inc.*, 733 S.W.2d at 406–07 (holding that pleadings that expressly identified the defendants and alleged generally that "Defendants" engaged in complained-of conduct were sufficient to give fair notice of claim); *see also Tapia*, 355 S.W.3d at 766 (fair notice standard "relieves the pleader of the burden of pleading evidentiary matters with meticulous particularity").

Krachinski's pleading here was sufficient for Schmitz to ascertain the nature and basic issues—including a breach of contract claim—that would be involved in the lawsuit, and it was sufficient to enable Schmitz to determine what testimony or other evidence would be relevant to enabling him to prepare a defense. *See Low*,

221 S.W.3d at 612. We conclude that Schmitz received fair notice of the breach of contract claim against him. *See id.*

Vortek further argues that the trial court erred in awarding attorney's fees against it because Civil Practice and Remedies Code section 38.001 only allows recovery of attorney's fees against a corporation or an individual, and it is a limited liability company. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001; *Alta Mesa Holdings, L.P. v. Ives*, 488 S.W.3d 438, 455 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (holding that section 38.001 does not authorize recovery of attorney's fees in breach of contract action against limited liability company). However, Krachinski asserted multiple causes of action against Vortek, and Vortek did not challenge all of the causes of action asserted against it on appeal. Krachinski also sought attorney's fees under Civil Practice and Remedies Code chapter 37, and Vortek does not challenge this basis for the award of attorney's fees on appeal.

Generally, an appellant must attack all independent bases or grounds that fully support a complained-of ruling or judgment, and if the appellant fails to do so, we must affirm the ruling or judgment. *Oliphant Fin. L.L.C. v. Hill*, 310 S.W.3d 76, 77–78 (Tex. App.—El Paso 2010, pet. denied); *see also Britton v. Tex. Dep't of Criminal Justice*, 95 S.W.3d 676, 681–82 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (holding that appellant must attack all independent grounds

17

that fully support an adverse ruling; if appellant fails to do so, we must affirm trial court's judgment). "This proposition is predicated upon the understanding that if an independent ground fully supports the complained-of ruling or judgment, but the appellant assigns no error to that independent ground," then the appellate court must accept the validity of the unchallenged ground, and, "thus, any error in the grounds challenged on appeal is harmless because the unchallenged independent ground fully supports the complained-of ruling or judgment." *Oliphant Fin.*, 310 S.W.3d at 78.

Because Vortek has failed to attack all independent grounds that would fully support the trial court's judgment, we must affirm the judgment. *See id.*; *Britton*, 95 S.W.3d at 682.

We overrule Vortek and Schmitz's first issue.

## Unliquidated Damages

In their second and third issues, Vortek and Schmitz challenge the trial court's award of damages, arguing that the trial court erred in failing to hold a hearing on unliquidated damages and that Krachinski failed to provide evidence of unliquidated damages.

Rule of Civil Procedure 243 provides:

If the cause of action is unliquidated or be not proved by an instrument in writing, the court shall hear evidence as to damages and shall render judgment therefor, unless the defendant shall demand and be entitled to a trial by jury in which case the judgment by default

18

shall be noted, a writ of inquiry awarded, and the cause entered on the
jury docket.

TEX. R. CIV. P. 243. For an unliquidated claim where liability is established, as
here, evidence of damages may be supplied by affidavits. *See Dodd*, 426 S.W.3d at
293; *Silverado Truck & Diesel Repair, LLC v. Lawson*, No. 05-18-00540-CV,
2019 WL 1467966, at *4 (Tex. App.—Dallas Apr. 3, 2019, no pet.) (mem. op.).
Thus, it was not necessary for the trial court to hold a hearing in order to consider
evidence of unliquidated damages. *See Lawson*, 2019 WL 1467966, at *4 (holding
that trial court did not err by failing to conduct hearing on unliquidated damages
where it considered affidavit evidence).

Here, Krachinski provided to the trial court a certified copy of his sworn
testimony from the temporary injunction hearing describing the circumstances that
resulted in his loss and identifying his out-of-pocket damages, and he provided an
affidavit, based on his personal knowledge and identifying the total amount owed
as a result of Vortek and Schmitz's conduct. He also provided affidavits from his
attorney establishing reasonable and necessary attorney's fees incurred in this case.
Contrary to Vortek and Schmitz's assertion, this was evidence sufficient to support
the award of unliquidated damages and attorney's fees. *See Tex. Commerce Bank,
Nat'l Ass'n v. New*, 3 S.W.3d 515, 517 (Tex. 1999); *Huey-You v. Kimp*, No. 02-16-
00172-CV, 2018 WL 359633, at *3 (Tex. App.—Fort Worth Jan. 11, 2018, pet.
denied) (mem. op.) ("During a default-judgment proceeding, affidavit testimony

19

will support the award of unliquidated damages if the affidavit avers personal knowledge of the facts, describes the circumstances that resulted in the loss, and identifies the total amount owed as a result."); *Dodd*, 426 S.W.3d at 293 (same).

Vortek and Schmitz also argue that Krachinski improperly included attorney's fees "as an element of actual damages." However, any error with respect to awarding damages in an amount greater than had been pled is waived if the complaining party fails "to object to the amount of the judgment." *Siegler v. Williams*, 658 S.W.2d 236, 240 (Tex. App.—Houston [1st Dist.] 1983, no writ); *see Coleman v. Dean*, No. 04–14–00811–CV, 2015 WL 5156921, at *6 (Tex. App.—San Antonio Sept. 2, 2015, pet. dism'd) (mem. op.) (holding that party waives complaint that damages award exceeded amount pled in petition when complaint was not raised in trial court); *see also In re Nalle Plastics Family Ltd.*, 406 S.W.3d 168, 174–75 (Tex. 2013) (recognizing that attorney's fees unrelated to ongoing litigation but instead claimed as an element of damages may be recovered as compensatory damages); *CBIF Ltd. P'ship v. TGI Friday's Inc.*, No. 05-15-00157-CV, 2017 WL 1455407, at *15 (Tex. App.—Dallas Apr. 21, 2017, pet. denied) (mem. op.) (discussing circumstances in which attorney's fees may be considered as part of damage award). "The party making . . . an objection [to the amount of damages] should do so in a motion to limit the judgment to the amount pleaded or raise the issue in a motion for new trial." *Siegler*, 658 S.W.2d at 240.

Vortek and Schmitz failed to raise any complaints regarding the award of attorney's fees in their motion for new trial, and, thus, they have waived this complaint. *See id.*

We overrule Vortek and Schmitz's second and third issues.

## Conclusion

We affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Kelly, and Goodman.