**Affirmed and Opinion Filed October 3, 2024**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

---

**No. 05-22-00899-CV**

---

**CHRIS HAMILTON, Appellant**

**V.**

**BRUCE BUTTE AND JONATHAN PECK, Appellees**

---

**On Appeal from the 429th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 429-04068-2019**

---

## MEMORANDUM OPINION

Before Justices Goldstein, Garcia, and Miskel
Opinion by Justice Goldstein

This is an appeal from a take nothing judgment against appellee Bruce Butte.

In one issue, appellant Chris Hamilton contends that the trial court erred in failing

to create an equitable remedy in his favor. We affirm in this memorandum opinion.

*See* TEX. R. APP. P. 47.2(a).

## BACKGROUND

Hamilton is an entrepreneur who buys and sells cars, sometimes for personal

use and sometimes for profit. He owns a company called Track Focused Motorsports

(Track). Hamilton became interested in buying and selling cars through his

relationship with appellee Jonathan Peck, from whom Hamilton first purchased a car in 2008 when Peck was working for a car dealership. Eventually, Peck founded his own car business called Dallas Motorsports (DMS).[1] Hamilton became an investor[2] in DMS, and he and Peck, through DMS, started buying cars together in 2015 or 2016.

Appellee Butte was another investor in DMS. He met Peck "probably 15, 20 years ago" when he first purchased a car from him. From there, Butte and Peck "built a relationship," and eventually Butte "started financing" car purchases and other aspects of DMS's business. Typically, Peck would present Butte with a "car package"—a list of cars Peck intended to buy—and Butte would wire money to DMS or Peck to fund the purchase. DMS would then make regular interest payments to Butte until it paid back the loan in full. By the time of the transaction giving rise to this lawsuit, Peck was several hundred thousand dollars indebted to Butte under this arrangement.

In January or February 2019, Peck contacted Hamilton with an offer. He said that "a gentleman named Bruce Butte had a 2011 [Porsche] GT2 RS for $190,000." Hamilton did not know Butte and had no knowledge of Butte's relationship with DMS and Peck. Hamilton sought a loan for the purchase price from his bank. The

---

[1] In the record, DMS is identified as Maverick Motorsports, LLC d/b/a Dallas Motorsports.

[2] The exact nature of this investment relationship is unclear. Although Hamilton alleged in his live pleadings that he was an "investor" in DMS, he testified only that he and DMS "invested in various car deals."

bank "requested comparative pricing to make sure that the value that they were loaning on would be good." Hamilton thus asked Peck for, and received, the vehicle identification number (VIN) for the car. Hamilton agreed to buy the car, and Peck gave him wiring instructions to send the funds directly to Butte. On February 25, 2019, Hamilton's company, Track, wired $190,000 to Butte.

Unbeknownst to Hamilton, Peck represented to Butte that the incoming wire transfer was a partial payment on DMS's outstanding loan obligations to him. Butte did not know Hamilton and was unaware of Peck's representations regarding a Porsche GT2 RS. When Butte was asked at trial why he did not send the money back when he realized it came from Track instead of DMS, he responded, "I had no idea who was sending me the money. I'd never heard of Track. I mean, they had racing teams at [DMS]."[3]

On March 7, 2019, Hamilton contacted DMS about the Porsche and another car he had agreed to buy from Butte, a Rolls-Royce. Hamilton learned from that conversation that "one of the cars may not exist at all." Hamilton got Butte's phone number from the DMS representative and called him to inquire about the Porsche and the Rolls Royce. Butte confirmed that "the Porsche did not exist." Butte called Hamilton back "a day or so later" and said that he would deliver the Rolls Royce but would not pay Hamilton back the $190,000.

_____

[3] Butte had previously invested in DMS's racing team. In an email from Peck to Butte dated December 5, 2018, Peck thanks Butte for his "2019 marketing sponsorship" in the amount of $220,000 for the "Dallas Motorsports / General Brick Sales Racing partnership."

On July 30, 2019, Hamilton filed this lawsuit against Butte, Peck, and DMS. Hamilton asserted claims for declaratory judgment, fraudulent inducement, common law and constructive fraud, and negligent misrepresentation. Hamilton eventually nonsuited his claims against DMS and proceeded to a bench trial against Peck and Butte on July 22, 2022. At trial, Hamilton, Butte, and Peck were called to testify. Peck refused to answer any substantive questions, invoking his Fifth Amendment right against self-incrimination. Pursuant to the parties' agreement, the trial court found Peck liable and awarded Hamilton $190,000 on his fraud claim against Peck. However, the trial court found in Butte's favor and entered a take-nothing judgment on Hamilton's claims against him. This appeal followed.

## DISCUSSION

In his sole issue, Hamilton asserts that the trial court erred in failing to grant him equitable relief.[4] Specifically, he argues that the trial court should have found an implied-in-law contract between himself and Peck. Hamilton further argues that the trial court should have voided said contract because the evidence conclusively established that (1) Peck was Butte's ostensible agent, (2) in that role, Peck made material misrepresentations to Hamilton regarding the existence of the Porsche for sale, and (3) Hamilton acted in reliance on those representations and as a result was damaged in the amount of $190,000. Butte responds that Hamilton failed to plead

---

[4] We note that Hamilton's appeal does not challenge the take nothing judgment on the claims pled and tried, nor any finding of fact or conclusion of law; therefore we limit the pertinent facts and analysis to the sole issue raised on appeal.

his theories of agency and implied-in-law contract. Butte also argues that the evidence supports the trial court's conclusion that Hamilton was not damaged. We agree with Butte that Hamilton's theories of recovery on appeal are based on unpleaded claims.

We begin with whether Hamilton pleaded his theory of implied-in-law contract. A contract "implied in law"—otherwise known as a "quasi-contract"—"is not a peculiar brand of contract." *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000). In fact, it "is not a contract at all but an obligation imposed by law to do justice even though it is clear that no promise was ever made or intended." *Id.* A quasi-contract is "distinguishable from a true contract because a quasi[-]contract is a legal fiction, an obligation imposed by law regardless of any actual agreement between the parties." *Fraud-Tech, Inc. v. Choicepoint, Inc.*, 102 S.W.3d 366, 387 (Tex. App.—Fort Worth 2003, pet. denied). A party generally cannot recover under a quasi-contract theory when there is an express contract covering the subject matter of the parties' dispute. *Id.* However, a litigant may plead and seek to recover under both theories and then recover in accordance with the evidence presented. *Id.*

In his petition, Hamilton asserted claims for declaratory judgment, fraudulent inducement, common law and constructive fraud, and negligent misrepresentation.[5]

---

[5] We note that the trial court made a specific finding providing that these were Hamilton's asserted claims. Hamilton requested additional and amended findings of fact and conclusions of law, none of which relate to "implied-in-law contracts," quasi-contract, or entitlement to equitable relief. The record reflects that his theories of recovery were not raised in the trial court either as a pleading or in trial by consent.

Under each of the fraud claims, Hamilton requested "any relief necessary to restore [him] to his previous position." Under his prayer for relief, Hamilton requested damages, pre- and post-judgment interest, declaratory judgment, attorney's fees, costs of court, and "such other and further relief to which [he] may be entitled at law or in equity, whether pled or unpled."

Hamilton avers that the trial court should have created an "equitable remedy" by finding an implied-in-law contract, and then voiding it. Hamilton argues the following grounds for finding an implied-in-law contract:

> One circumstance in which an implied-in-law contract may be found is when one party knowingly accepts a benefit from another who is not a volunteer and who does not confer the benefit as a gift. Another is when the conduct of the parties implies that they had a mutual intention to contract.[6] Under the principles of equity, this relationship also meets the standard for one of general assumpsit where refund of the money meets the requirements of equity and good conscience.

Hamilton's position is unpersuasive. His desired equitable remedy exists, if at all, only in relation to causes of action that must first be pleaded and proved. The first statement refers to a claim of quantum meruit. *See Black Lake Pipe Line Co. v. Union Const. Co., Inc.*, 538 S.W.2d 80, 86 (Tex. 1976) ("[T]he right to recover in Quantum

---

[6] Although Hamilton argues only that an implied-in-law contract should have been imposed, this sentence refers specifically to implied-in-*fact* contracts. *See Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972) ("It is said that the distinction between an express contract and one implied in fact is that the former arises when the contractual terms are stated by the parties; and that the latter arises from the acts and conduct of the parties, it being implied from the facts and circumstances that there was a mutual intention to contract."); *see also Plotkin v. Joekel*, 304 S.W.3d 455, 477 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (explaining difference between express, implied-in-fact, and implied-in-law contracts). As this is the only sentence in Hamilton's brief referring to an implied-in-fact contract, to the extent Hamilton argues that the trial court should have found that such a contract existed between himself and Butte, that argument is inadequately briefed. *See* TEX. R. APP. P. 38.1(i).

meruit is based upon a promise implied by law to pay for beneficial services rendered and knowingly accepted."). Quantum meruit is a cause of action that must be pleaded and proved. *See Centex Corp. v. Dalton*, 840 S.W.2d 952, 955 (Tex. 1992) ("Even if quantum meruit might have afforded Dalton an alternate ground of recovery, Dalton did not plead it, and a judgment must be based upon pleadings."). Similarly, the assumpsit theory relies on a cause of action for money had and received. *MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 813 (Tex. App.—Dallas 2012, no pet.) ("Money had and received is a category of general assumpsit to restore money where equity and good conscience require refund."). A claim for money had and received must also be pleaded and proved. *See Sister Initiative, LLC v. Broughton Maint. Ass'n, Inc.*, No. 02-19-00102-CV, 2020 WL 726785, at *28 (Tex. App.—Fort Worth Feb. 13, 2020, pet. denied) ("[Appellants] point to no pleading asserting a claim for breach of oral loan agreements or making a money had and received claim that relied on oral loan agreements."). Because Hamilton did not plead claims for quantum meruit or assumpsit, the trial court could not have erred in failing to grant him relief on those claims.

Attempting to avoid that conclusion, Hamilton asserts that he need not have *expressly* pleaded his quasi-contractual claims. Responding to Butte's argument that he failed to plead implied contract, Hamilton argues in his reply brief that he was not required to recite any "magic words" in his petition in order to be entitled to equitable relief. He claims that his prayer for equitable relief and request to be

–7–

"restore[d] . . . to his previous position" were sufficient to put Butte on fair notice of his claims. Finally, Hamilton invokes our State's rules on fair-notice pleadings, quoting the Texas Supreme Court's statement in *In re Lipsky* that "[e]ven the omission of an element is not fatal if the cause of action may be reasonably inferred from what is specifically stated." 460 S.W.3d 579, 590 (Tex. 2015) (orig. proceeding).

We disagree. A pleading should contain "a short statement of the cause of action sufficient to give fair notice of the claim involved." In the absence of special exceptions, a petition should be construed liberally in favor of the pleader. *Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993). A court should uphold the petition as to a cause of action that may be reasonably inferred from what is specifically stated, even if an element of the cause of action is not specifically alleged. *Id.* We may not, however, use a liberal construction to read into the petition a claim that it does not contain. *Royale v. Knightvest Mgmt., LLC*, No. 05-18-00908-CV, 2019 WL 4126600, at *7 (Tex. App.—Dallas Aug. 30, 2019, no pet.) (mem. op.). Similarly, while a prayer for general relief may include relief consistent with the petitioner's pleading, it cannot be used to "enlarge a pleading to the extent that it embraces an entirely different cause of action for which fair notice does not exist." *Portfolio Recovery Assocs., LLC v. Talplacido*, No. 05-13-00682-CV, 2014 WL 2583691, at *2 (Tex. App.—Dallas June 10, 2014, no pet.) (mem. op.) (quoting *Stoner v. Thompson*, 578 S.W.2d 679, 683 (Tex. 1979)).

After carefully reviewing Hamilton's petition, we find nothing from which we may reasonably infer a cause of action for quantum meruit or money had and received. The petition alleges an oral contract was formed between Hamilton and defendants Butte, Peck, and DMS. That allegation was the basis for Hamilton's cause of action for declaratory judgment that a contract existed, a claim at odds with the imposition of quasi-contractual duties. *See Fraud-Tech*, 102 S.W.3d at 387. Although Hamilton was entitled to plead quasi-contractual theories as alternatives to his contract claim, *see id.*, he did not do so. The petition also alleges that the defendants made false representations about the existence of the Porsche. These alleged falsehoods were the basis for Hamilton's claims for fraud and negligent misrepresentation. Hamilton's requests for "any relief necessary to restore [him] to his previous position" were attached to his fraud claims, not any general theory of recovery. Those requests therefore cannot be construed as quasi-contractual claims, but rather demands for a reliance damages. *See, e.g.*, *Haase v. Glazner*, 62 S.W.3d 795, 800 (Tex. 2001) (reliance damages available in claim for fraudulent inducement); *see also AKIB Constr. Inc. v. Shipwash*, 582 S.W.3d 791, 808 (Tex. App.—Houston [1st Dist.] 2019, no pet.) ("[R]eliance measure [of damages] seeks to put the injured party in as good an economic position as it would have occupied had the contract not been made."). Finally, Hamilton's general prayer for equitable relief cannot enlarge his pleading to include a quasi-contractual claim. *See Talplacido*, 2014 WL 2583691, at *2; *see also Burnett v. James*, 564 S.W.2d 407,

409 (Tex. App.—Dallas 1978, writ dism'd) ("The general rule is that a prayer for general relief will authorize judgment for any relief a trial court has jurisdiction to grant so long as the judgment is supported by the allegations and proof and is consistent with the theory of recovery stated in the pleadings.").

We conclude that Hamilton's failure to plead any quasi-contractual causes of action is fatal to his sole issue on appeal. As such, we need not address whether the evidence supporting his agency theory[7] or that his damages were legally and factually sufficient to entitle him to such relief.

## CONCLUSION

We overrule Hamilton's sole issue and affirm the trial court's judgment.

/Bonnie Lee Goldstein/
BONNIE LEE GOLDSTEIN
JUSTICE

220899F.P05

---

[7] We note Hamilton also failed to plead his agency theory, which would also preclude any recovery against Butte on the facts before us. *See Sheetz v. Slaughter*, 503 S.W.3d 495, 501 (Tex. App.—Dallas 2016, no pet.) (theory of agency liability must be pleaded).

–10–



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

CHRIS HAMILTON, Appellant

No. 05-22-00899-CV     V.

BRUCE BUTTE AND JONATHAN PECK, Appellees

On Appeal from the 429th Judicial District Court, Collin County, Texas Trial Court Cause No. 429-04068-2019.

Opinion delivered by Justice Goldstein. Justices Garcia and Miskel participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee BRUCE BUTTE AND JONATHAN PECK recover their costs of this appeal from appellant CHRIS HAMILTON.

Judgment entered this 3rd day of October 2024.